THOMAS SNELL

*v.*

ABNER TAYLOR.

|182   473|
|97a  ²620|

*Opinion filed October 19, 1899—Rehearing denied December 13, 1899.*

1. EVIDENCE—*what will not sustain claim of settlement of partnership.* A finding of the court, based on conflicting evidence, that a settlement was not made between partners at a specified time, as claimed by one of them, is justified when supported by letters between the parties and entries in the firm books, subsequently to such date, inconsistent with the theory of settlement.

2. INTEREST—*when interest should not be charged on accounting between partners.* On an accounting between partners, interest should not be charged against one of them where he has not improperly used the fund or promised to pay interest or refused to account before the bill was filed, or in any way sought to delay the hearing.

*Taylor* v. *Snell*, 79 Ill. App. 462, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of DeWitt county; the Hon. LYMAN LACEY, Judge, presiding.

Thomas Snell, on December 9, 1875, filed his bill against Abner Taylor, in which he averred that about the year 1870 he and Abner Taylor became partners in the business of buying and selling real estate in equal shares as to profits and losses, the business to be carried on at Chicago under the name of Snell & Taylor; that the co-partnership thus formed was commenced December 31, 1870, and its business carried on at Chicago under said firm name, and has since continued; that Abner Taylor, for and in the name of the firm, purchased a certain tract of land containing twenty-seven acres in Cook county; that said tract, according to the intention with which it was purchased, was divided into lots, and, as such, sold; that Abner Taylor has sold and conveyed all of said lots, received all the moneys that have been paid on the same

by persons purchasing, and has also received all notes, bonds, securities, etc., arising out of the sale thereof, amounting to the sum of $100,000; that Abner Taylor has ever refused, and still refuses, to account to complainant for any part of such moneys, notes, bonds, securities, etc.; that there has not been any settlement or adjustment between complainant and Taylor of said co-partnership business for six years and upwards, and that the accounts respecting the same are still open and unliquidated, and the amount of money due said co-partnership from said Taylor, individually, is very considerable, and much more than his share or proportion thereof; and praying process against Taylor, and that he be required, but not under oath, to make answer to the bill, and that the co-partnership business of Snell & Taylor may be dissolved, and that an account may be taken of all said co-partnership dealings and transactions which are open and pending between the partners, and that what thereupon shall appear to be due from Taylor to complainant may be decreed to be paid by him; and that a writ of injunction may be issued restraining Taylor from drawing, making, endorsing or negotiating any note or bill or security whatever, for or on account of or in the name of said firm, or from receiving or keeping any money, bill or security for or on account of said co-partnership funds, or from using or employing said co-partnership funds or any part thereof, and from further intermeddling with the books, papers, bills, notes, cash and security in said business, and that a proper person may be appointed by the court as a receiver, etc.

On December 9, 1875, a summons was issued out of the court on said bill, and duly served the next day on Abner Taylor. The proceeding was regularly continued, without any other orders of the court therein or answer from Taylor, until September 2, 1889, when Taylor filed a plea and answer, alleging that as to so much of the bill as seeks an account of the dealings and transactions be-

tween complainant and defendant prior to the first day of January, 1875, the defendant says that on the first day of January, 1875, complainant and defendant settled their accounts of all sums of money which defendant had before that time received either from complainant or from complainant and defendant as partners, and of all matters and things thereunto relating, or at any time before the said first day of January, 1875, being or depending between them in relation to their co-partnership dealings, and in respect of which the complainant's bill has since been filed; that complainant, after a strict examination of said account and every item and particular thereof, which the defendant avers, according to the best of his knowledge and belief, to be true and just, did approve and allow the same, and actually received from the defendant the sum of $1000, the balance of said account, which, by said account, appeared to be justly due from the defendant, and the complainant then and there, in consideration thereof, released and discharged the defendant from any and all liability or obligation to him on account of said co-partnership dealings up to that time; and therefore defendant pleads said settlement in bar to so much of the complainant's bill as is hereinbefore particularly mentioned; and for answer to the residue of said bill, defendant says that in 1868 complainant and defendant entered into an agreement to become partners in the business of buying and selling real estate, in equal shares as to profit and loss, but denies that it was carried on in the name of Snell & Taylor, and charges it was carried on in the name of this defendant, and was limited to the purchase and sale of the lands hereinafter described, and none other; denies that he, for and in the name of Snell & Taylor, purchased a tract of land containing twenty-seven acres in Cook county, but states that he purchased it in his own name, and for his individual purposes, long before the formation of said copartnership, and that afterwards, in the year 1868, he,

at the earnest solicitation of said Snell, allowed him to become the owner of an undivided one-half thereof, and that from that time until it was sold they owned it as partners; admits that said land was divided and sub-divided into lots, known as Taylor's subdivision, and the most, if not all of it, sold; denies that he sold and conveyed all of said lots and has also received all the money that had been paid on the same, and has also received all the notes, bonds, etc., arising out of the sale of said lots, amounting to the sum of $100,000, and avers the truth to be, the complainant sold and conveyed a large number of said lots and received the proceeds of the same, which he continues to hold and for which he refuses to account to this defendant; denies that he retained any of the money or other property belonging to the said firm, and that he has ever refused to account to the complainant for any portion of what he ever did receive for said firm, but states that on January 1, 1875, he accounted to the complainant for all the money he, the defendant, had ever received for or on account of said firm, and there was a full settlement of all their co-partnership dealings between them up to that time, each one of them receiving the full amount due him from the firm on account of all sales made to the firm by either of them at that time; that defendant conveyed to the complainant lot 21 in said subdivision; that complainant was to hold it and sell it as the property of the firm, and account to the firm for its proceeds, and defendant charges that the complainant has never accounted for said last mentioned lot or its proceeds, although, as this defendant is informed and believes, he sold the same for a large sum of money, which he still retains; defendant denies that complainant is entitled to the relief, or any part thereof, in this bill demanded, but says that this defendant is entitled to have the complainant account to him for this last mentioned lot, which he prays may be required of him to do.

Afterwards, at the August term, 1890, of the court, there was filed by the complainant a replication, denying the truthfulness of the facts stated in the plea and answer, and insisting that the facts set out in the bill were true.

At the March term, 1891, the issue joined upon the plea and answer, on the question of a settlement of the partnership business, was heard and evidence taken, and the court found that there had been no such settlement, and referred the case to the master to take testimony and state an account between Snell and Taylor. The master did take evidence and reported the same, with an account stated between the parties, to which exceptions had been made before the master by each party and overruled by him, upon which evidence and account of the master the proceeding was heard by the court, together with the exceptions made by the parties to the master's report, account and rulings thereon, and the court, on April 11, 1895, after sustaining certain exceptions upon each side and re-casting the account in accordance with its rulings on the exceptions, found that there was owing to the complainant, Snell, by the defendant, Taylor, on December 9, 1875, the sum of $5071.96, with interest thereon from that time until the hearing, amounting to $5693.51, making in all $10,765.47, and decreed that Taylor pay that amount to Snell, and also that Taylor pay all the costs. Taylor prosecuted a writ of error from the Appellate Court, which partly affirmed and partly reversed the decree of the circuit court.

RICHARD A. LEMON, for appellant.

MOORE & WARNER, for appellee.

Per Curiam: In deciding this case the Appellate Court expressed the following views:

"The evidence shows that some time in 1868 Snell and Taylor did form a co-partnership, and, as such partners,

they owned and platted into lots a tract of land in Cook county, and sold the same out to purchasers, at a profit of many thousands of dollars over its cost. Snell lived in DeWitt county, Illinois, while Taylor lived in the city of Chicago and had entire charge of the partnership business, which was conducted in Chicago in a real estate office, where the firm had employed a salesman and bookkeeper by the name of Salter, who made most of the sales and kept all of the books of Snell & Taylor in this co-partnership business, and rendered to Snell quarterly statements of the condition of the firm's affairs, as shown by the books. Snell and Taylor had frequent settlements up to the time of the great Chicago fire in 1871, when all the books and papers of the firm were destroyed. After the fire Snell went to Chicago, and having with him the three last quarterly statements sent him by their clerk, he and Taylor divided considerable of the undivided proceeds of the lots sold up to that time, and a new set of firm books was then started. After that, and up to the fall of 1874, the firm continued to sell lots as before, Taylor and the clerk running the firm business in their office in Chicago, and Snell residing in Clinton but often going to Chicago. When there he would, at times, look over the business and receive from Taylor some of the proceeds of the lots that had been sold, and, after that time, the business of selling lots continued, but the evidence is conflicting as to whether Taylor sold them as an individual or partner.

"It is claimed by Taylor that the books of the firm, as kept by the clerk, show, and that the fact was, that he and Snell had a settlement of their firm matters on October 8, 1874, and then divided all the assets of the firm not before then divided, except one lot which Snell took and was to sell and account to him for one-half the proceeds thereof, which, up to the time the decree was entered, he had not done, although he had sold the lot for $2500. Snell claims, however, that no such settlement

occurred in October, 1874, and that there was no division between him and Taylor then, as claimed. On this question of fact the evidence is conflicting. The books of the firm contain many entries, and there were in evidence letters written by Taylor to Snell after the fall of 1874, which are very inconsistent with his testimony on the question that there was a settlement and division between him and Snell in October, 1874, as he, Taylor, claimed; and Taylor's letters to Snell, written between 1874 and 1889, corroborate Snell and contradict Taylor.

"We have, at considerable pains, examined the copies of the books of Snell & Taylor, as kept by their book-keeper, Salter, and the evidence of the witness Chandler, who played the part of a go-between, as between Snell and Taylor, in an effort to effect a settlement between them in October, 1874, and which, he says, he did effect; also the testimony of the book-keeper, Salter, and that of Snell and Taylor, as it appears in the transcript of the certificate of evidence in this case, and we are, after a careful consideration thereof, satisfied that the learned chancellor who heard this case in the court below was justified therefrom in stating the account between these two partners as he did, except that he improperly charged in the account the item of $5693.51 against Taylor, it being the interest on $5071.96 from December 9, 1875, the date the bill was filed, until April 11, 1895, the date the decree was entered. As these parties were partners, the balance of $5071.96 of the firm assets found to be in the hands of Taylor on an accounting ought not to bear interest in favor of his partner, Snell, unless it was shown —and it was not—that Taylor had promised to pay interest, or had improperly used, or neglected to account for, the assets of the partnership before the bill for an accounting was filed; or, after the bill was filed, by throwing obstacles in the way of collection, by some circumvention, contrivance or management of his own, which had induced the court to withhold the hearing of

the proceeding against him longer than it otherwise would have done. *Imperial Hotel Co.* v. *Claflin Co.* 175 Ill. 119; *Randolph* v. *Inman,* 172 id. 575; *Brownell* v. *Steere,* 128 id. 209.

"Neither the evidence nor the bill shows that, before it was filed, Snell requested or procured an accounting from Taylor of these firm funds, and, after the bill was filed, it does not appear from the record that Taylor did interpose any unwarrantable applications for delay or in any manner seek to delay a hearing, but on the contrary, the long delay between the filing of the bill and a hearing and decree was caused solely by Snell. Hence we think the item of $5693.51, as interest, charged by the court in its decree herein, to Taylor, was erroneously so charged, and for that reason the decree will be reversed as to that much and affirmed for the residue of $5071.96."

We concur in the views above expressed and in the foregoing conclusion reached by the Appellate Court. Accordingly the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*