ROSEMARY WEAVER, Plaintiff-Appellee, v. HUGH H. WATSON, Defendant-Appellant.

Fifth District   No. 5—84—0051

Opinion filed December 27, 1984.

Elmer Jenkins, of Benton, for appellant.

Harris, Lambert & Wilson, of Marion, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff Rosemary Weaver filed her complaint on February 19, 1981, in the circuit court of Franklin County against defendant Hugh Watson, seeking that a receiver be appointed to operate the business known as Watson's Jewelry, that Mr. Watson be enjoined from operating Watson's Jewelry and disposing of its assets, that the business be ordered wound down, that a full accounting be made as to the assets and business of Watson's Jewelry, and that Mrs. Weaver be paid for her share of Watson's Jewelry. After a bench trial and an accounting, the court entered judgment for Mrs. Weaver and against Mr. Watson

in the sum of $93,789.77 plus costs of suit. Mr. Watson appeals. There is no cross-appeal.

Most of the pertinent facts are undisputed. Mr. Watson and his brother Allie, Mrs. Weaver's husband, entered into a written partnership agreement dated May 27, 1950, concerning the operation of Watson's Jewelry, the partnership business. The agreement by its terms was to run for a period of 25 years, should both partners so long live. Under the articles of partnership, Mr. Watson was to devote the whole of his time and attention to the business; Allie was not required to devote any time to the business; Mr. Watson was to draw a monthly salary, to be determined by the partners, payable out of profits of the business; if there were no profits, Mr. Watson was to be paid whenever there were profits. Under the articles of partnership, if either partner were to die during the partnership, then his executor or administrator, or any person or persons to whom he should by will bequeath his share, was entitled to the share of such deceased partner in the capital, stock, property, and effects of the partnership, and might either continue as a partner or partners in the business or terminate the partnership as therein provided by a living partner. Under the agreement's provisions governing termination, the partners were to fully and correctly account to each other, and were to divide everything in the same shares as their capital contributions; the agreement stated that the capital had been brought in by the partners in equal shares.

Allie died September 17, 1974, in his will leaving his entire estate to his wife, Mrs. Weaver. There is no indication of record that said will was ever admitted to probate. Mr. Watson and Mrs. Weaver met at various times after Allie's death to discuss the business; the substance of these conversations is disputed. By written notice to Mr. Watson dated November 21, 1980, Mrs. Weaver gave Mr. Watson 90 days' notice of termination of the partnership.

Mrs. Weaver testified that in a meeting between herself and Mr. Watson about four days after Allie's death, she and Mr. Watson agreed to carry on the business as partners; that, a few days later, Mr. Watson brought her a bank signature card, which she signed, after which her name was added to the business checking account together with Mr. Watson's and Allie's name was dropped; she discovered in 1980 that on September 26, 1978, her name had been dropped, and Mr. Watson's wife's added, without Mrs. Weaver's knowledge or permission; in 1976, she received from Mr. Watson a check for $1,000 with the note "dividends" on the face of the check; she received a $750 check in 1977 and a $500 check in 1978; in May

1979, Mr. Watson told her that the business had had a bad year and that there had been no profits and hence no checks; in June 1979, Mr. Watson offered her $15,000 for her share of the business.

Mr. Watson testified that his discussions with Mrs. Weaver after Allie's death concerned what amount she would take for Allie's interest in the business; she never set a price; she turned down an offer of $20,000; he never agreed to be her partner; the "dividend" payments were gratuitous and were made out of his affection for his deceased brother; he had put her name on the checks of the business to make her feel better; she had no interest in the business.

Per order of the trial court, Mr. Watson caused to be prepared a proposed accounting, dated September 17, 1981. After a hearing, the trial court found that accounting insufficient. A second accounting was filed December 1, 1981. After another hearing, the trial court on September 30, 1983, entered the judgment complained of. *Inter alia,* the court found that the partnership had dissolved upon Allie's death and that at all times since Allie's death Mr. Watson had been under a duty to render an accounting for Allie's interest in the business, but had failed to do so and instead had used Allie's property in the operation of Watson's Jewelry. The judgment included amounts for (1) Allie's estate's share of the partnership property as of his death; (2) the estate's share of the net profits of the business from Allie's death to December 31, 1982, due to Mr. Watson's retention of the estate's property; and (3) statutory interest on the amounts owed for property and profits, less the amounts paid by Mr. Watson to Mrs. Weaver from 1976 to 1978. The court reserved jurisdiction as to accounting for 1983 profits, if any. Mrs. Weaver's prayer for appointment of a receiver was denied.

Mr. Watson argues that the trial court erred in failing to find Mrs. Weaver's claim barred by the applicable statute of limitations. Mr. Watson argues that Mrs. Weaver's cause of action accrued upon Allie's death and thus is barred by the five-year statute of limitations applicable to actions on unwritten contracts and for actions for injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for. (Ill. Rev. Stat. 1973, ch. 83, par. 16.) Mrs. Weaver argues that she had no right to sue for an accounting until she dissolved the partnership by letter, effective 90 days after the receipt thereof, and that her cause of action accrued when the partnership was dissolved. Alternatively, Mrs. Weaver contends that her cause of action accrued on January 7, 1980, when she discovered that her name had been dropped from the business check-

ing account and thus discovered Mr. Watson's position that she had no interest in the partnership. Mrs. Weaver also argues that her action is based on the written partnership agreement and hence that the applicable statute of limitations is the 10-year statute governing actions on written contracts or other evidences of indebtedness in writing. Ill. Rev. Stat. 1973, ch. 83, par. 17.

The statute of limitations to be applied is to be determined by the type of injury sustained, rather than the nature of the facts from which the claim arises. (*Schreiber v. Eastern Airlines, Inc.* (1976), 38 Ill. App. 3d 556, 558, 348 N.E.2d 218, 219-20.) Under section 16 of the Limitations Act (Ill. Rev. Stat. 1973, ch. 83, par. 17), a contract cannot be said to be in writing unless the parties thereto, as well as the terms and provisions thereof, can be ascertained from the instrument itself. Thus, where parol evidence must be resorted to to show the existence of a contractual relationship between the plaintiff and the defendant, the five-year statute rather than the 10-year statute applies. *Novosk v. Reznick* (1944), 323 Ill. App. 544, 549, 56 N.E.2d 318, 321.

Recognizing the applicability of the rule in *Novosk v. Reznick,* Mrs. Weaver argues that Mr. Watson's duty was to account to his brother, and that this is what the trial court ordered him to do. However, Mrs. Weaver's action was brought in her own right, and judgment entered in her favor personally, not as representative of an estate. Parol evidence was necessary to show her personal right to recover based on the contract of the partners. The five-year statute applies in this case.

Accordingly, we must decide whether Mrs. Weaver's cause of action accrued more than five years prior to the February 19, 1981, filing of her complaint. Two events suggest themselves as having commenced the running of the five-year period, the first being Allie's death in 1974 and the second being Mrs. Weaver's 1980 discovery that her name had been dropped from the business checking account. The latter event was expressly relied upon in Mrs. Weaver's complaint as revealing to her that her partnership with Mr. Watson was denied by him. The complaint was filed within five years of this event.

The result is no different if Mrs. Weaver's cause of action is deemed to have accrued upon Allie's death. Mr. Watson was the dominant figure in the partnership business even when his brother was alive. The placing of Mrs. Weaver's name on the business checking account and the annual "dividend" payments were, if not evidence of a partnership agreement between herself and Mr. Watson, at least a representation that she had an interest in the business and that that

interest would be recognized. A surviving partner bears a fiduciary relationship toward the estate of a deceased partner. (*Jackson v. Jackson* (1951), 343 Ill. App. 3d 31, 45, 98 N.E.2d 169, 176.) Under the instant circumstances, we are of the view that the statute of limitations was tolled until Mrs. Weaver learned of Mr. Watson's actions inconsistent with her claimed interest in the partnership business. (See *Higgins v. Higgins* (1966), 72 Ill. App. 2d 179, 188, 219 N.E.2d 88, 93-94.) The trial court did not err in failing to find Mrs. Weaver's action barred by the five-year statute of limitations.

Mr. Watson argues that the trial court erred in failing to find Mrs. Weaver's action barred by *laches. Laches* is applied where there is such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. It is necessary to examine the facts of each case to determine whether *laches* applies. (*Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385, 388, 392 N.E.2d 1349, 1350-51.) *Laches* will not be found merely because of lapse of time. (*Kozak v. Retirement Board* (1981), 99 Ill. App. 3d 1015, 1019, 425 N.E.2d 1371, 1374, *aff'd* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) The passage of time must have caused such a hardship to the defendant that granting relief to the plaintiff would be inequitable and unjust. (*Harper v. City Mutual Insurance Co.* (1978), 67 Ill. App. 3d 694, 699, 385 N.E.2d 75, 79.) *Laches* will not be found if the delay is short of the statutory period of limitations and there has been no change of circumstances. *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 1004, 388 N.E.2d 943, 959.

Mr. Watson argues that he was prejudiced by Mrs. Weaver's delay in filing her action in that he was induced to dispose of the written records which he needed to prove his position as to Allie's share of the partnership business. We disagree in view of Mr. Watson's testimony at trial and his admission in his brief that he had met several times with Mrs. Weaver beginning in 1974 in an effort to agree upon compensation for her share. Such records were pertinent to any informed attempt to determine the worth of Allie's share. Thus Mr. Watson's disposal of his records does not appear to have been attributable to any delay on Mrs. Weaver's part. The trial court, having failed to find Mrs. Weaver's claim barred by the statute of limitations, did not err in refusing to find her guilty of *laches.*

Mr. Watson argues that Mrs. Weaver is bound by the unappealed September 16, 1981, written order in which the trial court concluded that Mrs. Weaver had done nothing after Allie's death to "continue"

the partnership per the partnership agreement. Mr. Watson argues that the trial court in its final judgment nevertheless awarded Mrs. Weaver damages as though she had been a partner after Allie's death. There are two answers to this contention. First, the final judgment appealed from is not inconsistent with the September 16, 1981, order. In the final judgment, Mrs. Weaver was found entitled to her husband's share as of his death, plus damages resulting from Mr. Watson's failure to account for and pay over that share at that time. Second, even if the September 16, 1981, order were inconsistent with the final judgment, such inconsistency alone would not require reversal of the judgment. The order of September 16, 1981, did not finally determine the rights of the parties. Such determination could not be made until an accounting was rendered. Thus the September 16, 1981, order was merely interlocutory. (See *In re Estate of Basile* (1975), 32 Ill. App. 3d 618, 620, 336 N.E.2d 214, 215.) An interlocutory order may be modified or vacated at any time prior to final judgment. *Richichi v. City of Chicago* (1964), 49 Ill. App. 2d 320, 325, 199 N.E.2d 652, 655.

Mr. Watson argues that the evidence establishes that Mrs. Weaver did not act to "continue" the partnership after Allie's death and that the court's apparent conclusion otherwise was contrary to the manifest weight of the evidence. Our review of the judgment complained of indicates that the trial court agreed with Mr. Watson on this point. Said judgment does not depend on the conclusion that Mr. Watson and Mrs. Weaver ever operated the business as partners.

Finally, Mr. Watson contends that the trial court erred in awarding Mrs. Weaver prejudgment interest as to the amounts due her from Allie's share of the partnership. A partner is not liable for interest merely because the property is in his hands for the purpose of winding up the affairs of the partnership, and whether he may be liable depends on the circumstances of each case. (*Randolph v. Inman* (1898), 172 Ill. 575, 577, 50 N.E. 104, 105.) Where the circumstances are such as equitably to demand payment of interest, as where one partner has retained the money for an unreasonable length of time, or where he is wrongfully withholding it (*Korziuk v. Korziuk* (1958), 13 Ill. 2d 238, 148 N.E.2d 727), or where one partner has improperly used or neglected to account for the assets of the partnership (*Randolph v. Inman* (1898), 172 Ill. 575, 50 N.E. 104, 105; *Snell v. Taylor* (1899), 182 Ill. 473, 475-76, 55 N.E. 545, 547), interest will be allowed from the time when the partnership accounts should have been settled (*Korziuk v. Korziuk* (1958), 13 Ill. 2d 238, 148 N.E.2d 727). Here, the trial court found that since Allie's death, Mr. Watson

had been under a duty at all times to render an accounting for Allie's interest in the partnership, yet had retained possession of Allie's property and had used it in the business. These findings are sufficient to support the award of interest, and are not manifestly contrary to the weight of the evidence. (See *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 1006, 388 N.E.2d 943, 960.) We find no error as to the award of interest.

For the foregoing reasons, the judgment of the circuit court of Franklin County is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.