DAVID S. BROWN, Plaintiff-Appellant, v. LAWRENCE GOODMAN, Defendant-Appellee.

First District (4th Division) No. 85—2768

Opinion filed September 30, 1986.

Springer, Casey, Haas, Dienstag & Silverman, of Chicago (Gary E. Dienstag, Adolph L. Haas, and Martin L. Silverman, of counsel), for appellant.

Foran, Wiss & Schultz, of Chicago (Jeff D. Harris and Kenneth M. Soldat, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

On January 8, 1963, the plaintiff, David S. Brown, entered into a contract with Joseph J. Kuhny for the sale of certain real estate owned by Brown. Under the contract, Kuhny agreed to purchase the subject property and Brown reserved a five-year option to repurchase

the property. To exercise that right, Brown was required to notify Kuhny of his intention to purchase and deposit simultaneously with the delivery of the notice of intent a certified check in the sum of $10,000 as earnest money and, within 15 days thereafter, deposit additional earnest money of $40,000. The option agreement provided that a sale to a third party shall specifically be subject to Brown's right of purchase. The contract and option agreement were recorded.

On October 23, 1964, the property was sold by Kuhny to the defendant, Lawrence Goodman. The contract between Goodman and Kuhny refers to the option rights of Brown and states that the sale is subject to Brown's option rights under the 1963 option agreement. Brown was notified by Kuhny of the sale to Goodman but did not attempt to exercise the option at that time.

On January 8, 1968, within the five-year period, Brown appeared at the offices of Goodman with a certified check for $10,000. Brown delivered the check to Goodman along with his notice of intent to purchase, which stated as follows:

"Mr. L. Goodman
c/o Portland Investment Company
2800 North Milwaukee Avenue
Chicago, Illinois
Dear Mr. Goodman,
    Re: NOTICE OF INTENT TO PURCHASE
Pursuant to the terms of contract dated January 8, 1963 between David S. Brown and Joseph J. Kuhny I hereby notify you of my intention to purchase the property referred to in said contract and in all the documents referred to therein and I deposit with you herewith my certified check payable to you in the amount of $10,000. This is sent to you as successor in title to Joseph J. Kuhny.

                          Yours truly,
                          /s/David S. Brown
                          David S. Brown
                          4739 N. Harding Avenue
                          Chicago 25, Illinois
encl. $10,000 ck."

At the time Brown delivered the $10,000 check, he instructed an employee of Goodman to type the following statement on the reverse side of the check:

"Earnest money deposit paid per Supplemental Agreement dated January 8, 1963, between David S. Brown and Joseph J. Kuhny."

Two weeks later, on January 19, 1968, Brown again appeared at Goodman's offices with $40,000 in additional earnest-money checks, each of which was unendorsed and payable to Brown and contained the following language on the back of each check:

> "Additional earnest money deposit paid per supplemental agreement dated January 8, 1963 between David S. Brown and Joseph J. Kuhny."

Goodman informed Brown that he would not sell Brown the property for less than $1 million. Brown refused to pay anything more than $500,000 and refused to endorse the $40,000 in additional earnest-money checks.

On January 24, 1968, Goodman's attorney wrote the following letter to Brown:

> "We reiterate on behalf of our client that the tender does not comply with the agreement referred to above and we consider the option to purchase set forth therein as not having been complied with and to have therefore expired by its terms on January 8, 1968."

Ten years later, on January 6, 1978, Brown brought this two-count, second amended complaint against Goodman. Count I alleged that Goodman breached the 1963 option agreement on January 19, 1968, when Goodman refused to honor Brown's option rights after Brown had performed all conditions precedent for a valid exercise of the option. Count II alternatively alleged that Goodman breached a new agreement entered into on January 8, 1968, when Brown offered to purchase the property from Goodman on the same terms contained in the 1963 option agreement. According to count II, a new contract was created when Brown tendered to Goodman the $10,000 earnest-money check which Goodman accepted when he endorsed the check.

Goodman moved for summary judgment on the second amended complaint. Goodman alleged that, as to count I, the 1963 option agreement was an oral contract governed by the five-year statute of limitations for oral contracts. (Ill. Rev. Stat. 1985, ch. 110, par. 13–205.) Since this action was not filed until 10 years after the alleged breach, the action was time barred. As to count II, Goodman contended that the events in January 1968 did not constitute a new contract. Consequently, as it was not a written contract it was also time barred. The trial court granted summary judgment on both counts. However, the trial court granted Brown leave to file a third amended complaint to proceed on an unjust-enrichment claim based on Goodman's retention of the $10,000 check. That matter is still pending in the trial court.

On appeal, Brown first contends that count I was not barred by the five-year statute of limitations applicable to actions on unwritten contracts (Ill. Rev. Stat. 1985, ch. 110, par. 13—205). Rather, he asserts that the 1963 option agreement was written and therefore subject to the 10-year statute governing actions on written contracts (Ill. Rev. Stat. 1985, ch. 110, par. 13—206). Consequently, his action was timely brought within 10 years from the date of breach. Goodman responds that, as the contract did not name Goodman or otherwise identify him as a party to the option agreement, parol evidence would be necessary in order to ascertain any contractual relationship between Brown and Goodman. Goodman maintains that, accordingly, the option agreement must be considered unwritten for limitation purposes.

■ Illinois courts give a strict interpretation to the meaning of a written contract within the statue of limitations. For statute of limitations purposes, a contract is considered to be written if all the essential terms of the contract are in writing and are ascertainable from the instrument itself. (*Clark v. Western Union Telegraph Co.* (1986), 141 Ill. App. 3d 174, 176, 490 N.E.2d 36; *Weaver v. Watson* (1984), 130 Ill. App. 3d 563, 567, 474 N.E.2d 759; *Munsterman v. Illinois Agricultural Auditing Association* (1982), 106 Ill. App. 3d 237, 238-39, 435 N.E.2d 923; *Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 73, 387 N.E.2d 831.) If parol evidence is needed to make the contract complete, then the contract is treated as being oral under the statute of limitations. (*Clark v. Western Union Telegraph Co.* (1986), 141 Ill. App. 3d 174, 176, 490 N.E.2d 36; *Wielander v. Henich* (1965), 64 Ill. App. 2d 228, 231, 211 N.E.2d 775.) With regard to the identity of the parties to the agreement, the leading case of *Railway Passenger & Freight Conductors' Mutual Aid & Benefit Association v. Loomis* (1892), 142 Ill. 560, 32 N.E. 424, states that if the agreement, as set forth in writing, is so indefinite as to the identity of the parties to the agreement so as to necessitate the resort to parol evidence, the agreement is an oral contract within the meaning of the statute of limitations. (142 Ill. 560, 567, 32 N.E. 424.) *Loomis* concerned whether an action brought by a widow to recover benefits under the bylaws of a mutual aid society was barred by the five-year statute of limitations pertaining to oral contracts. The plaintiff's deceased husband was a member of the society, but the bylaws merely provided for the "widow" to be paid a specific sum. The court found that the agreement was not a contract in writing with the widow, as she was not named in the agreement and the term "widow" was too general. The court found that the plaintiff could not be ascertained as a party to the contract as parol evidence was neces-

sary to show that the deceased left a widow and that the plaintiff was his widow. Thus, the law is clear in Illinois that to constitute a written contract under the statute of limitations the written instrument itself must completely identify the parties to the contract. (*Railway Passenger & Freight Conductors' Mutual Aid & Benefit Association v. Loomis* (1892), 142 Ill. 560, 32 N.E. 424; *Clark v. Western Union Telegraph Co.* (1986), 141 Ill. App. 3d 174, 490 N.E.2d 36; *Munsterman v. Illinois Agricultural Auditing Association* (1982), 106 Ill. App. 3d 237, 435 N.E.2d 923; *Pratl v. Hawthorn-Mellody Farms Dairy, Inc.* (1977), 53 Ill. App. 3d 344, 347, 368 N.E.2d 767; *Matzer v. Florsheim Shoe Co.* (1971), 132 Ill. App. 2d 470, 472, 270 N.E.2d 75; *Wielander v. Henich* (1965), 64 Ill. App. 2d 228, 211 N.E.2d 775; see also *Jones v. United States* (E.D. Ill. 1976), 424 F. Supp. 236, 238.) We recognize that courts in some jurisdictions, in applying the same general principles discussed above, are more liberal in treating a written instrument as a written contract for statute of limitations purposes if the instrument meets the requirements of a written contract under the statute of frauds. See 3 A.L.R.2d 809, 812 (1949).

■ Brown contends that while Goodman was not named in the option agreement, Goodman's identity as a party to the option agreement is easily ascertainable from several writings made subsequent to the option agreement; namely, Brown's notice of intent to purchase sent to Goodman and Brown's $10,000 earnest-money check endorsed by Goodman. We find that this argument is not on point. The issue is not whether the identity of Goodman can be readily ascertainable from subsequent writings, the issue is whether the identity of Goodman can be readily ascertained from the 1963 option agreement itself so as to avoid the resort to parol evidence. Brown cites a number of cases in support of his position. However, these cases concern whether an instrument is in writing to meet the statute of frauds requirements. (*Western Metals Co. v. Hartman Ingo Metal Co.* (1922), 303 Ill. 479, 135 N.E. 744; *Shugan v. Colonial View Manor* (1982), 107 Ill. App. 3d 458, 437 N.E.2d 731; *Jones v. Olsen* (1980), 80 Ill. App. 3d 1016, 400 N.E.2d 665; *Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 390 N.E.2d 428.) These cases are not relevant to the issue of whether the option agreement is a written contract as related to Goodman in order for the 10-year statute of limitations on written contracts to apply. As we earlier stated, the test for whether a contract is written under the statute of limitations in Illinois is not whether the contract meets the requirements of the Statute of Frauds, but whether all essential terms of the contract, including the identity of the parties, are in writing and can be ascertained

from the written instrument itself. The option agreement here fails to meet that test.

In the instant case, the option agreement does not name Goodman as a party to the contract. The option agreement merely states that the terms of the option are binding on a "third party" purchaser. The existence of any contractual relationship between Brown and Goodman can only be established by going outside of the option agreement and resorting to extrinsic evidence. Parol evidence is necessary to show that Goodman was the "third party" purchaser of the property from Kuhny and that Goodman was the owner of the property at the time Brown attempted to exercise the option. Consequently, the option agreement must be considered unwritten for limitation purposes, and Brown had to commence this action against Goodman within five years after the alleged breach. As Brown, however, did not file this lawsuit until almost ten years after the alleged breach, his cause of action in count I was time barred.

■ We also reject the additional argument Brown makes that count I could only be barred by *laches* rather than the statute of limitations. In fixing the period in which rights and claims will be barred by *laches*, equity follows the law, and generally courts of equity will adopt the statute-of-limitations period. (*Wall v. Chicago Park District* (1941), 378 Ill. 81, 96, 37 N.E.2d 752; *Davis v. Board of Review of the Department of Labor* (1985), 132 Ill. App. 3d 853, 856, 477 N.E.2d 842; *Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 764, 455 N.E.2d 246.) Consequently, *laches* will not be found if the delay in bringing suit, as in the instant case, is beyond the statute-of-limitations period. (*Schlossberg v. Corrington* (1980), 80 Ill. App. 3d 860, 865, 400 N.E.2d 73.) Having concluded that count I was barred under the statute of limitations, *laches* is inapplicable.

Brown devotes a major portion of his brief to the issue of whether the trial court improperly granted summary judgment on count II of the second amended complaint. Brown urges that there is a genuine issue of material fact as to whether the parties intended a new contract, separate from the 1963 option agreement, to purchase the real estate. He suggests that a written contract was entered into by the parties when Goodman endorsed and cashed the $10,000 cashier's check which Brown had delivered to Goodman on January 8, 1968, which incorporated by reference the terms and provisions of the 1963 option agreement.

■ We believe that the facts set forth in the pleadings, depositions and accompanying exhibits are insufficient to raise a genuine is-

sue of material fact as to intent. The option agreement provided that one of the conditions precedent to make a valid exercise of the option was the timely deposit of a $10,000 check as earnest money. Brown delivered a certified check for $10,000 to Goodman. On the back of the check, Brown had an employee of Goodman type "Earnest money deposit paid per Supplemental Agreement dated January 8, 1963, between David S. Brown and Joseph J. Kuhny." Brown stated that he had this language typed on the back of the check so Goodman would know what the check was for. Brown stated in his deposition that he regarded the $10,000 check as an exercise of his option rights under the 1963 option agreement. Goodman also stated in his deposition testimony that he believed that the $10,000 check was Brown's exercise of the option.

The option agreement also required that Brown deliver with the $10,000 check a notice of intent to purchase. Brown delivered his notice of intent to purchase the property along with the $10,000 check to Goodman. Brown's notice of intent states that it was being delivered to Goodman "[p]ursuant to the terms of the contract dated January 8, 1963, between David S. Brown and Joseph J. Kuhny *** I deposit with you herewith my certified check payable to you in the amount of $10,000."

Finally, the option agreement mandated that in order to exercise the option, Brown was required to deposit additional earnest money of $40,000 within 15 days after delivery of the notice of intent and the initial $10,000 earnest-money deposit. Within the 15-day period, Brown delivered the $40,000 in additional earnest money, which stated on the reverse side of each check that the checks were being delivered as "[a]dditional earnest money deposit paid per supplemental agreement dated January 8, 1963 between David S. Brown and Joseph J. Kuhny." Goodman testified in his deposition that his refusal to sell the property to Brown was due to Brown's failure to comply with the option agreement when Brown refused to endorse over to Goodman the $40,000 in additional earnest money. Goodman's letter of January 24, 1968, to Brown states that Brown failed to comply with the option agreement and Brown's option rights expired according to the terms of the agreement on January 8, 1968. Therefore, based on the foregoing evidence, the trial court properly found that no genuine issue of material fact existed as to the parties' intent. Both parties treated Brown's tender of the $10,000 check along with his notice of intent to purchase to be Brown's exercise of his option rights pursuant to the terms of the 1963 option agreement.

■ We recognize that summary judgment is generally inappro-

priate where questions of intent are presented. (*Schuster v. East St. Louis Jockey Club, Inc.* (1976), 37 Ill. App. 3d 483, 487, 345 N.E.2d 168.) However, where the facts here are undisputed, the intention of the parties to be bound contractually can be determined as a matter of law. (*Ebert v. Dr. Scholl's Foot Comfort Shops* (1985), 137 Ill. App. 3d 550, 558, 484 N.E.2d 1178; *Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 744, 365 N.E.2d 1028; *Nerone v. Boehler* (1976), 34 Ill. App. 3d 888, 891, 340 N.E.2d 534; see *United Farm Bureau Mutual Insurance Co. v. Elder* (1981), 86 Ill. 2d 339, 343, 427 N.E.2d 127.) Accordingly, no genuine issue of fact concerning intent was presented. Consequently, the trial court did not err in granting summary judgment on count II. Since we have determined that no contract existed, no statute-of-limitations issue arises as it relates to count II.

Accordingly, for the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P.J., and McMORROW, J., concur.