TRULA A. MROTZEK, Plaintiff-Appellant, v. TED N. GITCHO, Defendant-Appellee.

Fifth District   No. 5—86—0497

Opinion filed July 7, 1987.

Edward T. Graham, Jr., of Hershey, Bliss, Beavers & Periard, of Taylorville, for appellant.

Robert Broverman, of Robert Broverman, P.C., of Taylorville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Trula Mrotzek, filed suit in the circuit court of Christian County to obtain rescission of a contract for the purchase of a bowling alley. As grounds for rescission, plaintiff alleged fraud by the seller, Ted Gitcho, in that he had expressly represented to plaintiff that he had no knowledge of any pending investigations affecting the property, when in fact he knew that the county health department was conducting an ongoing investigation of deficiencies in the bowling alley's sewage disposal system. Following a bench trial, the circuit

court concluded that "there was a misrepresentation and failure to disclose a serious latent defect in the property amounting to fraud." The court nevertheless held that plaintiff was not entitled to rescission because of *laches*. Judgment was therefore entered in favor of Gitcho. Plaintiff now appeals. We affirm.

Plaintiff does not dispute that *laches* is a valid defense to a suit for rescission. She argues, however, that Gitcho did not properly allege the element of *laches* in his pleadings. This argument comes too late. The record discloses that *laches* was clearly an issue before the trial court, yet plaintiff made no objection there to the form or substance of the pleadings by which Gitcho attempted to raise the defense. As provided by section 2—612(c) of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—612(c)), "[a]ll defects in pleadings, either in form or substance, not objected to in the trial court are waived."

■■ Plaintiff asserts, in the alternative, that the trial court's finding of *laches* is against the manifest weight of the evidence. We disagree. As a general rule, *laches* is applied where there is "such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." (*Weaver v. Watson* (1984), 130 Ill. App. 3d 563, 568, 474 N.E.2d 759, 763.) Plaintiff correctly observes that *laches* will not be found merely because of lapse of time. (130 Ill. App. 3d 563, 568, 474 N.E.2d 759, 763.) Nevertheless, where, as here, a case is based on fraud:

> "far greater emphasis is placed on the delay in asserting the claim than on a change of circumstances, for an unreasonable lapse of time between discovering the supposed fraud and bringing the suit is of itself prejudicial to the party charged with fraud. The very nature of the charge calls for prompt action. An unexplained delay raises an immediate doubt as to a plaintiff's right to ask the intervention of a court of equity which is an appeal to justice and good conscience. One who requests the help of a court of equity must be of good faith and must be diligent in prosecuting his claim. The natural reaction of a person who has been defrauded is to cry out in protest and to move with alacrity in seeking redress. When he does neither, his claim and his motives are suspect." *Schoenbrod v. Rosenthal* (1962), 36 Ill. App. 2d 112, 120, 183 N.E.2d 188, 192.

■ Consistent with this view, our supreme court has stated that where a party desires to rescind for fraud:

> "he must, upon the discovery of the facts, at once announce his

purpose and adhere to that decision. A party seeking equitable relief against fraud should commence proceedings for relief as soon as reasonably possible. Acquiescence, consisting of unnecessary delay after such knowledge, will defeat the equitable relief." *Halla v. Chicago Title & Trust Company* (1952), 412 Ill. 39, 48-49, 104 N.E.2d 790, 795.

Plaintiff failed to heed these requirements. The evidence established that the sale of the property in question was closed in June of 1982. During August of 1982, plaintiff was informed of the problem with the sewage disposal system by the county health department. She thereupon telephoned Gitcho, but made no demands upon him. On direct examination by her attorney at trial, plaintiff related the following:

"ATTORNEY: And what was your conversation with Mr. Gitcho at that time?

PLAINTIFF: I told Ted the Health Department or the Health Inspector had been there and what he told us about the sewage system not working right. And he told us that he had done some things that were supposed to make it work better.

ATTORNEY: Did he tell you what he had done?

PLAINTIFF: Put laterals out in the field.

ATTORNEY: And what else did he tell you about the problem with the septic system?

PLAINTIFF: That it had been there and that he had done what he could to fix it.

ATTORNEY: Did he tell you whether or not he was concerned about having it fixed?

PLAINTIFF: No, sir. He told us not to worry about it then.

ATTORNEY: Did he explain why he didn't want you to worry about it?

PLAINTIFF: Because it had been there for so long. A problem.

ATTORNEY: And nobody had ever done anything about it in the past?

PLAINTIFF: Right.

ATTORNEY: And that was all the conversation you had with him at that time?

PLAINTIFF: Yes, sir."

Plaintiff claims that she subsequently contacted two different lawyers to help negotiate a settlement of this situation, but Gitcho testified that he could not recall receiving any communication from plaintiff or on plaintiff's behalf until the summer of 1985, when he got a

letter from one of plaintiff's lawyers. According to Gitcho, "[b]asically she was wanting some help on the $18,000 she would have to pay to hook on to the City sewer system." Not until November 22, 1985, did plaintiff, through the second of her lawyers, notify Gitcho of her desire to rescind the purchase agreement. Gitcho declined this proposal, and plaintiff filed suit on January 14, 1986, some 3½ years after the fraud was discovered.

In the meantime, plaintiff entered into various negotiations with the county health department on her own behalf in an attempt to resolve the sewage problems at the bowling alley. She continued to operate the bowling alley and to make the monthly payments to Gitcho as provided under the sales agreement. Moreover, even after suit was filed, the bowling alley remained in operation until May 12, 1986, when its operating license was revoked, and plaintiff continued to make her monthly payments to Gitcho until June of 1986.

Under these circumstances, plaintiff cannot seriously contend that she elected to rescind the purchase agreement promptly after learning of Gitcho's fraud, or that she "at once" announced her decision to seek rescission, or that she consistently adhered to that decision. Plaintiff has given no reasonable justification for her lack of diligence. Rather, the record suggests that she sought rescission in 1986 only because it was at that time that she finally decided that she could no longer afford to keep the business going. This is an inadequate basis upon which to grant the relief requested. As our supreme court has recognized:

> "[A party] is not allowed to go on and derive all possible benefits from the transaction and then claim to be relieved from his own obligations by a rescission or refusal to perform on his own part. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding he thereby waives all benefit of and relief from the misrepresentations." *Wollenberger v. Hoover* (1931), 346 Ill. 511, 546, 179 N.E. 42, 57.

We note, moreover, that plaintiff's lack of diligence would result in prejudice to Gitcho if rescission were to be granted. Circumstances have changed. When Gitcho sold the bowling alley to plaintiff and her husband, it was turning a profit. In the ensuing years under plaintiff's operation, it consistently suffered losses, its exterior and roof fell into disrepair, and it was ultimately closed.

Whether the defense of *laches* is available is to be determined upon the facts and circumstances of each case. (*Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 941,

494 N.E.2d 795, 800.) Plaintiff has cited various authorities in support of her claim, but we find those authorities distinguishable on their facts from the situation present here.

For the reasons set forth above, the judgment of the circuit court of Christian County is affirmed.

Affirmed.

KASSERMAN and WELCH, JJ., concur.