**Eugene HORBACH, Plaintiff,**

v.

**Alvis KACZMAREK and One Three Six, Inc., f/k/a Shred Pax Corporation, an Illinois Corporation, Defendants.**

No. 95 C 5180.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 9, 1996.

Thomas Campbell and Bart Thomas Murphy, Gardner, Carton & Douglas, Chicago, IL, for plaintiff.

Brian W. Lewis, David M. Simon and Michael J. Lotus, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Eugene Horbach, the owner of a 93% interest in the now-dissolved Illinois corporation TyrRee Corp. ("TyrRee"), has brought this suit against Shred Pax, Corp. ("Shred Pax"),[1] also an Illinois corporation, and its president, Alvis Kaczmarek, for breach of contract, fraud, and conversion. The defendants have moved to dismiss the complaint. For the reasons stated below, their motion is granted in part and denied in part.

### Background

In August of 1989, TyrRee was formed as an Illinois corporation to own and operate tire pyrolysis plants.[2] Horbach, a resident of the state of Washington, owned 71 percent of TyrRee's stock. Another TyrRee shareholder has assigned his right to Horbach, so Horbach now owns 93% of TyrRee's assets. TyrRee was dissolved on September 9, 1990.

In September of 1989, TyrRee and Shred Pax signed two contracts. The first of these contracts is a purchase order through which Shred Pax agreed to design, manufacture, and install certain tire pyrolysis and shredding equipment for TyrRee ("the Purchase Order"). This contract provided that Shred Pax would supply the equipment to TyrRee by February 1, 1990. According to Horbach, Shred Pax breached this contract by both failing to manufacture the equipment to meet contractual specifications and by failing to deliver the equipment on time. Horbach alleges that he first discovered Shred Pax's breach when he inspected the equipment in February of 1991.

The second contract to which TyrRee was a party is an option agreement in which Kaczmarek granted an option to TyrRee to acquire all of Kaczmarek's stock in Shred Pax (at least 83% of all outstanding stock)

---

1. Shred Pax changed its name to One Three Six, Inc. in September of 1994. Because Shred Pax signed the contracts at issue in this case, I simply refer to that defendant as Shred Pax.

2. Tire pyrolysis involves shredding and converting tires into commercially viable by-products.

within 180 days from the date that TyrRee accepted the equipment from Shred Pax ("the Option Contract"). According to Horbach, Kaczmarek breached this contract by wrongfully informing TyrRee on October 3, 1990 that the option had expired.

In November of 1990, Horbach began negotiating with Kaczmarek for Horbach to purchase 80% of Shred Pax's outstanding stock, owned by Kaczmarek. They drafted a Stock Purchase Agreement, pursuant to which Horbach paid Kaczmarek a $580,000 deposit. The agreement was never signed, however, and Kaczmarek failed to return Horbach's deposit. Kaczmarek subsequently sold his stock in Shred Pax to another entity.

In Count I of his complaint, Horbach alleges that Shred Pax breached the Purchase Order. In Count II, Horbach alleges that both defendants breached the Option Contract. In Count III, Horbach alleges that both defendants committed fraud. With Counts IV and V, Horbach seeks the equitable remedies of rescission and constructive trust for Shred Pax's breach of the Purchase Order. In Count VI, Horbach alleges that both defendants are liable for conversion for failing to return his deposit to Kaczmarek for the Shred Pax stock. Finally, in Count VII, Horbach seeks a constructive trust for this deposit.

### *Jurisdiction*

Horbach alleges that he may pursue this suit because TyrRee assigned him its rights under both contracts. As a resident of Washington, Horbach is diverse from the defendants. The defendants argue that I do not have diversity jurisdiction over this suit because under 28 U.S.C. § 1359, parties may not assign their claims in order to invoke diversity jurisdiction.

■ Under Illinois law, a dissolved corporation may pursue a civil action if that action "is commenced within five years after the date of such dissolution." 805 ILCS 5/12.80 (Smith–Hurd 1993). When that five year "wind-up" period expires, corporate property

that has not been disposed of automatically passes to the shareholders. *Matter of Morris,* 30 F.3d 1578, 1582 n. 2 (7th Cir.1994) (citing *Shute v. Chambers,* 142 Ill.App.3d 948, 492 N.E.2d 528, 531–32, 97 Ill.Dec. 92, 95–96 (1st Dist.1986) (allowing shareholders to pursue an action in their own capacities on a purchase agreement and note naming the dissolved corporation as payee)). *See also Dubey v. Abam Building Corp.,* 266 Ill. App.3d 44, 639 N.E.2d 215, 218–19, 203 Ill. Dec. 176, 179–80 (1st Dist.1994) (allowing former shareholder of dissolved corporation to sue lessor to recover security deposit owed to corporation); *Lake County Trust Co. v. Two Bar B, Inc.,* 182 Ill.App.3d 186, 537 N.E.2d 1015, 1020–21, 130 Ill.Dec. 686, 691–92 (1st Dist.1989) (allowing shareholders, after "wind-up" period had expired, to maintain action on a note and assignment of rents with dissolved corporation as payee)..

■ According to Horbach's complaint, TyrRee was dissolved on September 9, 1990. Thus on September 9, 1995 all of TyrRee's remaining assets, including its contracts with the defendants, passed to Horbach and the other TyrRee shareholders. The alleged assignment from TyrRee to Horbach was therefore unnecessary. It was not made to manufacture diversity jurisdiction, because two days before the complaint was filed Horbach already owned TyrRee's claims and could bring this diversity action. I am therefore not precluded from exercising diversity jurisdiction over this suit.[3]

### *Joinder*

■ In Counts VI and VII of his complaint, Horbach seeks the return of money he deposited with Kaczmarek under an alleged stock purchase agreement. The defendants claim that Kaczmarek took this money and applied it to TyrRee's liabilities to Shred Pax under the Purchase Order. Consequently, the defendants argue that TyrRee is a necessary and indispensable party to these counts under Federal Rule of Civil Procedure 19. TyrRee, however, no longer exists. It is not a necessary party because it does not

---

**3.** For the same reason, the defendants' argument that Horbach does not have standing to sue under these contracts fails. After TyrRee's dissolu- tion, its contracts passed through to its shareholders. Horbach therefore owns the right to collect on these contracts.

"claim[ ] an interest relating to the subject of the action." FED.RULES CIV.PRO. 19(a). *See also Boulevard Bank Nat'l Ass'n v. Philips Medical Systems Int'l B.V.,* 15 F.3d 1419, 1422 (7th Cir.1994) (finding threshold question under Rule 19 to be whether party is necessary under Rule 19(a)).

### *The Breach of Purchase Order Claims*

Defendants contend that all claims for breach of the Purchase Order are barred by the statute of limitations. Under the Illinois Commercial Code, the statute of limitations for breach of contracts for the sale of goods is four years. 810 ILCS 5/2–725(1) (Smith–Hurd 1993). The Purchase Order signed by the parties specified that delivery should take place by February 1, 1990. The defendants argue, therefore, that the limitations period began to run on that date. Horbach contends that Shred Pax fraudulently concealed its failure to supply the equipment on time. He admits, however, that he "discovered that he had a cause of action when he inspected the equipment in February, 1991 and found that contrary to the representations made to him, it was not completed and ready for testing, and further, it was not built in accordance with the specifications." (Response Brief at 7.) Because this complaint was filed in September of 1995, under the four-year statute of limitations, Horbach's claim, discovered in February of 1991, for breach of the Purchase Order is barred.

■ Horbach argues, however, that under the Illinois statute covering cases of fraudulent concealment, he has *five* years to bring the suit from the date he learned about the breach. *See* 735 ILCS 5/13–215 (Smith–Hurd 1992).[4] The language of this statute implies that not only is the limitations period *tolled* during the concealment period, but the subsequent filing period is also *extended* to five years. Illinois courts, however, have interpreted this statute to apply only to cases in which the defendant's fraudulent concealment leaves the plaintiff with less than a "reasonable time" to file suit under the ordinary statute of limitations. *See, e.g., Anderson v. Wagner,* 79 Ill.2d 295, 402 N.E.2d 560, 573, 37 Ill.Dec. 558, 571 (1979) ("If at the time the plaintiff discovers the 'fraudulent concealment' a reasonable time remains within the applicable statute of limitations, [the fraudulent concealment statute] does not toll the running of the limitation period."), *appeal dismissed sub nom Woodward v. Burham City Hospital,* 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980); *Suslick v. Rothschild Securities Corp.,* 164 Ill.App.3d 589, 517 N.E.2d 600, 603, 115 Ill.Dec. 189, 192 (1st Dist.1987) ("[S]ection 13–215, as interpreted by the Illinois Supreme Court and this court, does not extend the statute of limitations beyond its original expiration when a reasonable length of time remains in which to file suit following discovery of the fraudulent concealment."), *rev'd on other grounds,* 128 Ill.2d 314, 538 N.E.2d 553, 131 Ill.Dec. 178 (1989). Here, Horbach had three years from the date he learned of the breach and its concealment to file his suit within the applicable four year limitations period. Three years is a "reasonable time" and therefore the fraudulent concealment statute does not extend the time in which he may file. *See, e.g., Anderson, supra,* 37 Ill.Dec. at 570–71, 402 N.E.2d at 572–73 (finding seven months remaining in underlying period of limitations to be reasonable); *Suslick, supra,* 115 Ill.Dec. at 192, 517 N.E.2d at 603 (refusing to extend limitations period because twenty-three months is reasonable).

■ Horbach argues that the Illinois courts' interpretation of the fraudulent concealment statute in *Anderson* and its progeny contradicts the express language of the statute. Consequently, he asks me to disregard *Anderson* and apply the statute anyway. A federal court sitting in diversity is not at liberty to ignore clear state law authority. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). "This is true even if the federal court concludes that it sees 'a more enlightened path.'" *Doe v. Roe No. 1,* 52 F.3d 151, 154 (7th Cir.1995) (citations omitted). I there-

---

4. "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13–215.

fore decline to ignore *Anderson*.[5] Count I of Horbach's complaint, in which he seeks legal relief for breach of contract, is therefore barred.

The defendants also ask me to bar Horbach's equitable claims regarding the contract under the doctrine of laches. Laches may be applied when the plaintiff fails to exercise due diligence in asserting the claim and the defendant is prejudiced by the delay. *Van Milligan v. Board of Fire and Police Commissioners of the Village of Glenview*, 158 Ill.2d 85, 630 N.E.2d 830, 833, 196 Ill. Dec. 665, 668 (1994). Where the plaintiff waits to bring the suit until after the legal limitations period has elapsed, however, the equitable claims will also be barred, even if there has been no prejudice to the defendants. *See Brown v. Goodman*, 147 Ill. App.3d 935, 498 N.E.2d 854, 858, 101 Ill.Dec. 530, 534 (1st Dist.1986) ("In fixing the period in which rights and claims will be barred by laches, equity follows the law, and generally courts of equity will adopt the statute of limitations period."); *Schlossberg v. Corrington*, 80 Ill.App.3d 860, 400 N.E.2d 73, 76, 35 Ill.Dec. 936, 939 (1st Dist.1980) (requiring "a party seeking relief after the statutory period has elapsed [to] affirmatively explain in the complaint the reason for the delay [because] unexplained, unreasonable delays will bar relief in equity").

Horbach concedes the applicability of this line of cases, but reiterates his argument that his legal claim is not barred by the statute of limitations. Because I find that the four-year limitations period applies to Horbach's legal claim for breach of the Purchase Order, I hold that the doctrine of laches also bars his equitable claims regarding the Purchase Order.

### Breach of the Option Purchase Agreement

Horbach alleges that the defendants wrongfully terminated the option by inform-ing him in October of 1990 that the agreement had expired. By its terms, TyrRee's option to purchase Kaczmarek's stock expired 180 days after TyrRee accepted the equipment from Shred Pax. TyrRee never accepted the equipment before dissolving in September of 1990. Therefore, TyrRee lost the option to purchase Kaczmarek's stock. Moreover, by letter dated April 18, 1991, Horbach rejected the equipment and "cancelled" the purchase order. After that date, Kaczmarek was free to sell his stock to another entity.

Rather than rely on those facts, the defendants argue that Horbach waived his right to enforce the option contract. "Waiver is a voluntary intentional relinquishment of a known right, claim or privilege." *City of Chicago v. Michigan Beach Housing Cooperative*, 242 Ill.App.3d 636, 609 N.E.2d 877, 182 Ill.Dec. 343 (1st Dist.1993). It may arise either expressly or from conduct inconsistent with an intent to enforce that right. *Id. See also Sexton v. Smith*, 112 Ill.2d 187, 492 N.E.2d 1284, 1287, 97 Ill.Dec. 411, 414 (1986). I may decide that a party has waived its rights as a matter of law. *See Wald v. Chicago Shippers Ass'n*, 175 Ill.App.3d 607, 529 N.E.2d 1138, 1147–48, 125 Ill.Dec. 62, 71–72 (1st Dist.1988) ("Where there is no dispute as to the material facts and only one reasonable inference can be drawn therefrom, it is a question of law whether the facts proved constitute waiver."). In deciding a question of waiver on a motion to dismiss, I address whether the allegations of the complaint, taken as true, show as a matter of law that Horbach has waived this claim.

TyrRee and Kaczmarek signed an Option Contract under which TyrRee could purchase all of Kaczmarek's stock in Shred Pax (at least 83% of the outstanding shares) for a fixed price. According to Horbach's

---

**5.** Horbach cites *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 651 N.E.2d 1132, 209 Ill.Dec. 684 (1995), to show that the present Illinois Supreme Court disfavors the "reasonable time" rule. In *Hermitage Corp.*, the court declined to extend the *Anderson* "reasonable time" rule to the discovery rule. It did not, however, disturb the *Anderson* rule as applied to fraudu-lent concealment actions. *See id.*, 209 Ill.Dec. at 690, 651 N.E.2d at 1138 ("[B]ecause this case does not involve a fraudulent concealment issue that might extend the statute of limitations, we do not address *Anderson*."). Without more clear direction from the Illinois Supreme Court, I will not ignore *Anderson*.

**24**

complaint, the defendants breached this contract by erroneously informing Horbach on October 3, 1990 that the option had expired. Rather than protesting the defendants' unilateral termination of the option agreement, Horbach instead began negotiating with Kaczmarek in November of 1990 for the purchase of Kaczmarek's stock for himself. Horbach and Kaczmarek eventually drafted a Stock Purchase Agreement and Horbach paid Kaczmarek a $580,000 deposit for his stock. Eventually, though, their negotiations broke down and Kaczmarek sold his stock in Shred Pax to someone else. Now, after Horbach was unable to purchase Kaczmarek's Shred Pax stock for himself, he complains about the breach of TyrRee's option to purchase the stock. Horbach's conduct of negotiating with Kaczmarek to purchase Kaczmarek's Shred Pax stock for himself constitutes a waiver of his right to purchase it on behalf of TyrRee pursuant to the Option Contract.

Horbach half-heartedly attempts to argue that waiver should not apply where the stock sale was not consummated. I find unsurprising Horbach's inability to cite any authority for this interesting proposition. It is the act of seeking to purchase the stock for himself which constitutes Horbach's waiver of his right to enforce the option contract. Whether Kaczmarek eventually agreed to Horbach's terms is irrelevant.

### *Fraud*

■ The defendants contend that Horbach's claim for fraud is barred by the statute of limitations. The statute of limitations for a fraud claim in Illinois is five years. 735 ILCS 5/13–205 (Smith–Hurd 1992). The defendants argue that Horbach's cause of action accrued on the date that the contract required the equipment to be delivered. Illinois courts, however, apply the "discovery rule" to this five-year limitations period for actions "that could be characterized as torts arising from the contract." *Hermitage, supra,* 209 Ill.Dec. at 687, 651 N.E.2d at 1135. Thus Horbach has five years to file suit from the date he "[knew] or reasonably should [have] know[n] that he has been injured and that his injury was wrongfully caused." *Id.* (quoting *Jackson Jordan, Inc. v. Leydig, Voit*

*& Mayer,* 158 Ill.2d 240, 633 N.E.2d 627, 198 Ill.Dec. 786 (1994)).

■ Horbach alleges that he did not discover his injury until he inspected the equipment in February, 1991. He therefore asks me to measure the five-year statute of limitations from that date, rendering this suit timely. Horbach's complaint also states, however, that Shred Pax informed Horbach and TyrRee that the equipment was ready for delivery and testing in April of 1990. Despite the defendants' attempts to schedule testing and inspection of the equipment, Horbach did not examine it for 10 months. Horbach alleges no reason for his failure to pursue his contracts rights earlier. He does not, for example, allege that the defendants stopped him from inspecting the equipment earlier. Had Horbach inspected the equipment when it was ready, or even shortly thereafter, he would have discovered his alleged injury prior to September of 1990. The limitations period is only tolled until the date on which Horbach "reasonably should know" the defendants' fraud. Because this complaint was not filed until September of 1995, his claim for fraud is barred. *See, e.g., Fitton v. Barrington Realty Co.,* 273 Ill. App.3d 1017, 653 N.E.2d 1276, 210 Ill.Dec. 814 (1st Dist.1995) (action for fraud in a land contract overstating the acreage time-barred because if plaintiffs cared about the acreage of the property they were purchasing, they could have obtained a more detailed survey earlier).

### *Deposit on the Stock Purchase Agreement*

■ In Counts VI and VII of his complaint, Horbach states claims for conversion and unjust enrichment. Shred Pax argues that these claims are barred by the doctrine of equitable application of payments. "The doctrine of equitable application of payments allows a creditor to apply payments received from a debtor, without instructions on how to apply the payments, to any account the creditor chooses." *Airtite, A Division of Airtex Corp. v. DPR Limited Partnership,* 265 Ill. App.3d 214, 638 N.E.2d 241, 245, 202 Ill.Dec. 595, 598 (4th Dist.1994). In the present case, Horbach alleges that he paid $580,000 to Kaczmarek, not Shred Pax, as a deposit on

an agreement to purchase Kaczmarek's Shred Pax stock. Kaczmarek was not a "creditor" of Horbach because Horbach did not owe Kaczmarek any money. At best, Horbach (as a shareholder of TyrRee) owed money to Shred Pax. Defendants have not established that Kaczmarek had any right to apply this money to TyrRee's debt to Shred Pax.

### Conclusion

For the reasons stated above, Counts I, II, III, IV, and V will be dismissed with prejudice. Counts VI and VII remain.