CROCKER COMMERCIAL SERVICES, INC., Plaintiff,

v.

CHICAGO RIM CORPORATION, et al., Defendants.

No. 82 C 2433.

United States District Court, N. D. Illinois, E. D.

July 12, 1982.

---

Michael L. Weissman, Robert A. Pond, Philip L. Pomerance, Weissman & Pond, Chicago, Ill., for plaintiff.

Robert J. Peters, Frankel, McKay & Orlikoff, Chicago, Ill., for defendant John K. Tull.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Crocker Commercial Services, Inc. ("Crocker") has filed a two-count diversity jurisdiction Complaint against Chicago Rim Corp. ("Chicago Rim") and several of its shareholders. Count I seeks (1) collection on a note executed by Chicago Rim in Crocker's favor and (2) foreclosure of collateral securing the note. Count II seeks a judgment against several of Chicago Rim's shareholders, each of whom executed a partial guaranty of Chicago Rim's obligation to Crocker.

John K. Tull, one of the Count II defendants, has moved to be dismissed for want of subject matter jurisdiction. For the reasons stated in this memorandum opinion and order, Tull's motion is granted and each of the other shareholders is also dismissed for lack of jurisdiction.

Count II alleges, consistently with the attached guaranty, that Tull is potentially liable for $7,683, and the other seven shareholders for amounts ranging between $672 and $5,607. Each of those amounts does not of course exceed $10,000 as required by 28 U.S.C. § 1332(a) in diversity actions. Crocker seeks to avoid that jurisdictional defect by claiming the aggregate shareholders' liability of $24,840 constitutes the amount in controversy.

Such aggregation is impermissible. There is of course authority for the proposition that "[c]laims against two or more defendants can be aggregated for the purpose of obtaining jurisdictional amount, as a general proposition [only] (sic) if they are jointly liable to the plaintiff." *Aetna Casualty & Surety Co. v. Graves,* 381 F.Supp. 1159, 1163 (W.D. La. 1974); *see* C.A. Wright, Law of Federal Courts, § 36 at 139 (1976) ("To the rule against aggregation of claims for or against multiple parties, there is a single exception: If the several parties have a common undivided interest and a single title or right is involved, the interests of co-parties may be added together in determining the amount in controversy.").

But the guaranty instruments here belie any such characterization. Each was signed separately (many on different dates). Each speaks in individual terms and makes its signer individually liable as a person "primarily liable for the obligations" of Chicago Rim to Crocker. Each permits Crocker to "retain or obtain the primary or secondary liability of any party or parties, in addition to the undersigned with respect to any of the [Chicago Rim] liabilities"—a prerogative Crocker exercised by obtaining the other guaranties. Each gives Crocker free rein to release or compromise the liability of "any other party," to resort to the guarantor whether or not Crocker has proceeded against "any other party" and to apply amounts received "from whatsoever source" in any order it elects. Finally each concludes with a limitation of liability, "—% of $30,000 which is *his proportionate share* of part of the debt owed by Chicago Rim Corporation to Crocker Commercial Services, Inc." (emphasis added).

Both singly and in the aggregate (an unintended irony) those provisions are the quintessence of separate, *not* joint, liability. Crocker advances no Illinois authority[1] (or for that matter any other authority) that would transform the several liabilities to

---

1. By the terms of each guaranty it is "governed by the laws of the State of Illinois."

joint liabilities, the separate and differing interests to a "common undivided interest." Both authorities invoked by Crocker, *Estate of Isaacson v. Hertz,* 80 Ill.App.2d 109, 225 N.E.2d 106 (1st Dist. 1967) and Ill. Rev. Stat. ch. 76, § 3, simply confirm that already joint liabilities are joint and several—those authorities do not work the converse transformation.[2]

Crocker tries to escape the inevitable by pointing to the "common nucleus of operative fact" analysis some circuits (though not our own) applied before *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Courts adopting that concept allowed aggregation of jurisdictional amounts in situations short of joint liability, on a theory of pendent party jurisdiction. But *Zahn* put a stop to that approach. As our Court of Appeals put it only a few months ago in *Hixon v. Sherwin-Williams Co.,* 671 F.2d 1005, 1009 (7th Cir. 1982):

> *Zahn* has been interpreted as a rejection of pendent party jurisdiction. *See e.g., Alco Financial Services, Inc. v. Treasure Island Motor Inn, Inc.,* 82 F.R.D. 735 (N.D. Ill. 1979); Currie, *Pendent Parties,* 45 U.Chi.L.Rev. 753 (1978). We adopt that reading and reaffirm *Hampton:* a pendent party must meet the amount in controversy requirement of the diversity jurisdiction.

*Accord, Aetna Casualty,* 381 F.Supp. at 1162 n. 5; *Osbahr v. H & M Construction, Inc.,* 407 F.Supp. 621, 623 (N.D. Iowa 1975). Consequently, no pre-*Zahn* tendency toward an "expansive theory of subject matter jurisdiction" can help Crocker.

### Conclusion

Tull's motion to dismiss for lack of subject matter jurisdiction is therefore granted. Because each of the other seven Chicago Rim shareholders named in Count II occupies the same legal position, this Court must also dismiss them from the action *sua*

*sponte.* In sum, Count II of the Complaint is dismissed for want of subject matter jurisdiction over any of the defendants it names.

2. *St. Louis Union Trust Co. v. Stephens,* 116 F.2d 574 (5th Cir. 1941) long antedated the controlling *Zahn* case next referred to in the text. But *St. Louis* also provides a sharp contrast to the present case, for the individual

guarantors there signed a *single* instrument that *by its terms* was *joint and several.* None of the separate guaranties in this case has any joint liability language.