29 F.3d 337
 NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a
Delaware stock insurance company, Plaintiff-Appellant,
v.
WILKINS-LOWE & COMPANY, INCORPORATED, an Illinois
corporation, James R. Wilkins, David B. Lowe, et
al., Defendants-Appellees.
 No. 93-3806.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 19, 1994.
Decided July 13, 1994.
 
 Thomas J. Potter (argued), Ludens, Potter & Burch, Morrison, IL, for National Union Fire Ins. Co. of Pittsburgh, PA.
 John Kuhn, Stephen Prout (argued), Brinton & Fedota, Chicago, IL, for Wilkins-Lowe & Co., Inc., James R. Wilkins, David B. Lowe.
 Thomas M. Knepper (argued), Robert J. Kuker, Neal, Gerber & Eisenberg, Chicago, IL, for Anspacher & Associates, Inc., Richard Newendyke.
 Lisa A. Treviranus, Richard A. Palmer (argued), Ward, Murray, Pace & Johnson, Sterling, IL, for Sterling Federal Bank, F.S.B.
 Before SPROUSE,* COFFEY and KANNE, Circuit Judges.
 PER CURIAM.
 
 
 1
 National Union Fire Insurance Company of Pittsburgh ("National Union"), as subrogee of First Affiliated Securities, Inc. ("FAS"), appeals from the decision of the district court granting summary judgment to six defendants in National Union's action against them. National Union had insured FAS against the defalcations of its representatives and paid FAS's claims arising out of losses due to fraudulent actions by James Hall, an FAS agent. In this action, National Union alleged that each of the defendants shared Hall's culpability and attempted to recover the payments it made to its insured, FAS. Specifically, National Union asserted that all of the defendants assisted Hall in his conversion of customers' funds and were liable for his conversion under agency principles, under the Uniform Commercial Code, or for aiding and abetting conversion. It further asserted that Anspacher & Associates, Inc. ("Anspacher") and Richard Newendyke were also liable for fraud under Rule 10b-5 and for participating in a breach of fiduciary trust. The district court granted summary judgment in favor of all of the defendants. We affirm.
 
 
 2
 * A common thread runs through National Union's allegations against all of the defendants: Hall's actions in defrauding customers of FAS, a stock brokerage and investment firm.[1] By paying FAS a franchise fee, Hall became a registered representative of that company. Unbeknownst to FAS, however, Hall embarked on a nearly two-year course of action defrauding customers of FAS. He implemented a scheme of diverting customer payments to bank accounts he had established and using those funds to cover losses he sustained as a result of his own unsuccessful commodity trading.[2] Except for one jurisdictional determination, the district court made its summary judgment rulings after considering each of the theories which National Union asserted.
 
 
 3
 It based its summary judgment in favor of defendant Sterling Federal Bank ("Sterling") on its finding that the two claims against Sterling were jurisdictionally unsound because the amount in controversy was less than $50,000. The district court's judgment in favor of Wilkins-Lowe and Company, Inc. ("Wilkins-Lowe"), James Wilkins, and David Lowe was based on the court's finding that the funds misappropriated by Hall did not belong to FAS, and therefore, FAS was without authority to maintain an action for conversion. National Union's cause of action was, of course, dependent upon such a right in FAS. Similarly, the court granted summary judgment to Richard Newendyke and Anspacher because National Union's action against them was premised on a conversion of FAS property. As to the action against Anspacher and Newendyke for an alleged violation of Rule 10b-5, the district court ruled that the evidence failed to show that these defendants committed any of the acts proscribed by that rule or possessed the state of mind required for such a violation. Finally, the court ruled that under no interpretation of the evidence had Anspacher or Newendyke participated in Hall's breach of fiduciary duty to FAS. In our view, the district court correctly granted summary judgment in each of these circumstances. We consider each of its rulings, although not in the sequence of the counts alleged in the complaint.
 
 II
 
 4
 In Counts 6 and 7, National Union demanded relief against Sterling Federal because, in the course of his illegal activities, Hall had used an account at that bank. National Union argued below, and argues here, that $136,906.10 was run through the Sterling account; it urges that this was the amount converted by Sterling upon its acceptance of deposits. The district court, however, correctly found that National Union had no good faith basis for alleging the amount in controversy exceeded $50,000. Only three checks, totaling $14,500, were deposited into Hall's FAS account at Sterling Federal and thereafter converted.
 
 
 5
 The sum claimed by the plaintiff, of course, controls the determination of jurisdictional amount if the claim is apparently made in good faith. Shaw v. Dow Brands, Inc., 994 F.2d 364, 366 (7th Cir.1993). In fact, to warrant dismissal, it must appear to a legal certainty that the claim is for less than the jurisdictional amount of $50,000. St. Paul Mercury-Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Although claims against jointly liable defendants may be aggregated to meet the jurisdictional amount, Crocker Commercial Servs., Inc. v. Chicago Rim Corp., 546 F.Supp. 94, 95 (N.D.Ill.1982), here, National Union could not and did not make that claim. Therefore, we affirm the judgment of the district court dismissing the claims against Sterling for lack of jurisdiction.
 
 III
 
 6
 In Counts 1 and 2, National Union contended that Wilkins-Lowe, Wilkins, and Lowe are liable for Hall's conversions essentially because of the agreement Hall had with Wilkins-Lowe, which allowed him to use the name "Wilkins-Lowe," and variations thereon, in the course of his business. In Count 3, National Union contends that defendants Anspacher and Newendyke are also liable for Hall's conversion activities because Hall had deposited his customers' funds into his commodity account at Anspacher. It is unnecessary to consider the details of those relationships, however, because in our view, the district court correctly ruled that FAS (and consequently National Union) could not, by law, maintain a conversion action against Hall.
 
 
 7
 Under Illinois law, " '[t]he essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.' " In re Thebus, 108 Ill.2d 255, 91 Ill.Dec. 623, 628, 483 N.E.2d 1258, 1260 (1985) (quoting Bender v. Consolidated Mink Ranch, Inc., 110 Ill.App.3d 207, 65 Ill.Dec. 801, 806, 441 N.E.2d 1315, 1320 (1982)). To prevail, " '[o]ne claiming conversion must show a tortious conversion of the chattel, a right to property in it, and a right to immediate possession which is absolute.' " In re Thebus, 91 Ill.Dec. at 628, 483 N.E.2d at 1260 (quoting Jensen v. Chicago & W. Ind. R.R. Co., 94 Ill.App.3d 915, 50 Ill.Dec. 470, 474, 419 N.E.2d 578, 592 (1981)). Although money may be the subject of conversion, it must be capable of being described as a specific chattel; "an action for conversion of funds may not be maintained to satisfy a mere obligation to pay money.... It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." In re Thebus, 91 Ill.Dec. at 628-29, 483 N.E.2d at 1260-61 (emphasis added). Here, it is not necessary to resolve the issue of money as property, because under no interpretation of the facts could the customers' funds stolen by Hall be considered the property of FAS. If no conversion occurs, aiding and abetting a conversion is, of course, impossible.[3] De Kalb Bank v. Purdy, 205 Ill.App.3d 62, 150 Ill.Dec. 420, 430, 562 N.E.2d 1223, 1233 (1990). Therefore, we affirm the district court's summary judgment in favor of the defendants on Counts 1, 2, and 3.
 
 IV
 
 8
 In Count 4, National Union accused Anspacher and Newendyke of engaging in acts, practices, or courses of business that operated, or would have operated, as a fraud or deceit in connection with the purchase or sale of a security, in violation of 15 U.S.C. Sec. 78j(b) and Rule 10b-5 promulgated pursuant to its authority. National Union's contention that the district court erred in granting summary judgment on this issue also lacks merit. In order to establish secondary liability under Rule 10b-5(c),[4] a plaintiff must prove: 1) that the alleged aider and abettor, in connection with the purchase or sale of a security, committed one of the manipulative or deceptive acts prohibited by the Rule, and 2) that the alleged aider and abettor acted with scienter, the same mental state required for primary liability. Renovitch v. Kaufman, 905 F.2d 1040, 1045 (7th Cir.1990). Anspacher and Newendyke's marginal connection with Hall's securities activities clearly lacked the required scienter, defined in the context of securities fraud as the intent to deceive, manipulate, or defraud.[5] Id. at 1045-46.
 
 V
 
 9
 In Count 5, National Union's alleged liability on the part of Anspacher and Newendyke was based on a breach of fiduciary trust. National Union's theory of recovery against these defendants is premised on Newendyke's failure to learn of Hall's wrongful conduct. Anspacher and Newendyke stress, however, that their only connection with the activities underlying this litigation is that Anspacher negotiated margin checks deposited by Hall during the same period of time that Hall was stealing money from his customers. We agree with Anspacher and Newendyke that this minimal involvement in Hall's activities cannot constitute participation in Hall's breach of fiduciary trust to FAS.
 
 
 10
 It is true that a third party who colludes with a fiduciary in committing a breach of the fiduciary's duty, and who benefits thereby, is under a duty of restitution to the beneficiary, Chicago Park Dist. v. Kenroy, Inc., 78 Ill.2d 555, 37 Ill.Dec. 291, 296, 402 N.E.2d 181, 186 (1980), and "liability may be premised upon a defendant's participation in a fiduciary's breach of trust." Chabraja v. Martwick, 248 Ill.App.3d 995, 188 Ill.Dec. 230, 233, 618 N.E.2d 800, 803 (1993). The mere act of accepting a deposit, however, cannot amount to an act or omission which furthers or completes the breach of trust by the fiduciary. Id.
 
 
 11
 In view of the above, the judgment of the district court is affirmed.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Sprouse, Circuit Judge, United States Court of Appeals for the Fourth Circuit, sitting by designation
 
 
 [1]
 FAS is now bankrupt
 
 
 [2]
 When Hall's wrongful acts were discovered, he was charged with various state and federal criminal offenses, to which he pled guilty and was sentenced to imprisonment
 
 
 [3]
 Similarly, in relation to National Union's contention that Wilkins-Lowe is liable for Hall's conversions under an agency theory, there can be no viable action against Wilkins-Lowe for vicarious liability when the underlying conversion action is not maintainable
 
 
 [4]
 In its complaint, National Union simply alleged that Anspacher's and Newendyke's failure to discover the source of Hall's funds and performance of transactions on Hall's commodity account were fraudulent acts or courses of business within Rule 10b-5. Although National Union did not specifically allege secondary liability, the district court interpreted its claim as being based on that theory, as do we, since the defendants do not fall within the group of persons to whom Rule 10b-5 is directed, and therefore could not be primarily liable. Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490, 494-95 (7th Cir.1986). "[P]rimary and secondary liability differ in that one may be held secondarily liable without having actually purchased or sold a security." Renovitch v. Kaufman, 905 F.2d 1040, 1045 n. 7 (7th Cir.1990)
 
 
 [5]
 Although a showing of reckless conduct will satisfy the wrongful intent requirement, Renovitch, 905 F.2d at 1046, there was no evidence that Anspacher or Newendyke exhibited such conduct