Eugene HORBACH, Plaintiff,

v.

Alvis KACZMAREK and One Three Six, Inc., f/k/a Shred Pax Corporation, an Illinois Corporation, Defendants.

No. 95 C 5180.

United States District Court, N.D. Illinois, Eastern Division.

July 22, 1996.

---

Thomas Campbell, Bart Thomas Murphy, Gardner, Carton & Douglas, Chicago, IL, for plaintiff.

Brian W. Lewis, David M. Simon, John A. Roberts, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendants.

1. Shred Pax changed its name to One Three Six, Inc. in September of 1994. Because Shred Pax signed the contracts at issue in this case, I simply refer to that defendant as Shred Pax.

2. Earlier, I dismissed Count II, which alleges the breach of an option contract between TyrRee and

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Eugene Horbach, the owner of a 93% interest in the now-dissolved Illinois corporation TyrRee Corp. ("TyrRee"), has brought this suit against Shred Pax, Corp. ("Shred Pax"),[1] also an Illinois corporation, and its president, Alvis Kaczmarek, for breach of contract, fraud, and conversion. The defendants have moved to dismiss several counts of the complaint. For the reasons stated below, their motion is granted.

### Background

In September of 1989, TyrRee and Shred Pax signed a purchase order through which Shred Pax agreed to design, manufacture, install, and test certain tire pyrolysis and shredding equipment for TyrRee ("the Purchase Order"). The Purchase Order provided that Shred Pax would supply the equipment to TyrRee by February 1, 1990. When Shred Pax informed TyrRee that the equipment was ready in February of 1990, TyrRee negotiated and signed a written agreement with Shred Pax to store the equipment. TyrRee agreed to pay Shred Pax $16,200 per month to store the equipment until it could be installed and tested at a site of TyrRee's choosing. Ultimately, TyrRee paid Shred Pax $1,703,583 for the equipment as well as an additional $56,800 for storage.

In Count I of his complaint, Mr. Horbach alleges that Shred Pax breached both the Purchase Order and the separate contract for storage. In Count III, Mr. Horbach alleges that both defendants committed fraud. With Counts IV and V, Mr. Horbach seeks the equitable remedies of rescission and constructive trust. Finally, in Count VIII, Mr. Horbach alleges that Shred Pax is liable for conversion of the payments for the equipment and its storage.[2]

Shred Pax, because I found that it was time barred. Counts VI and VII, which relate to a stock purchase agreement between Mr. Horbach and Mr. Kaczmarek, withstood the original motion to dismiss and were not challenged by the defendants' second motion to dismiss.

In December, 1995, the defendants moved to dismiss Mr. Horbach's First Amended Complaint. I granted that motion in part, finding that his fraud and breach of contract claims were barred by the statute of limitations. Mr. Horbach has attempted to cure these claims by alleging additional facts which, he argues, indicate that the claims are not barred by the statute of limitations. Mr. Horbach also alleges a new count in which he states a claim for conversion. The defendants have now moved to dismiss all of these claims.

### Count I

■ In Count I, Mr. Horbach states a claim for breach of contract. In my earlier ruling, I found Mr. Horbach's claim for breach of the Purchase Order to be barred by the statute of limitations. Mr. Horbach now attempts to state a claim for breach of contract, based on a separate contract for the storage of the equipment.[3] The new separate contract would not be barred by the statute of limitations because it would be a contract for services and therefore subject to a ten year statute of limitations. *See* 735 ILCS 5/13–206 (Smith–Hurd 1992).[4]

The defendants argue that the storage agreement represented a mere modification of the Purchase Order, rather than a distinct contract. They note that the Purchase Order explicitly provided for subsequent written modifications.[5] Under the Purchase Order, Shred Pax was responsible for delivering the equipment to a site designated by Tyr-Ree no later than February 1, 1990. By February 14, 1990, when TyrRee had not yet procured a site, the parties executed the storage agreement. This agreement merely supplemented the contract by requiring Tyr-Ree to pay Shred Pax if Shred Pax stored the equipment beyond April, 1990. Conse-

quently, I agree with the defendants that the storage agreement represents a modification to the Purchase Order.

■ Because I find that the storage agreement is properly viewed as a modification to the Purchase Order rather than a separate contract, I must determine whether the modified Purchase Order, now incorporating both goods and services, still comes within the scope of the Illinois codification of the Uniform Commercial Code, which has a four year statute of limitations. *See* 810 ILCS 5/2–725(1) (Smith–Hurd 1992). To determine if the UCC applies, I must ask whether the contract "was predominantly one for the sale of goods with services incidentally involved, or was one for the rendition of services with the sale of goods incidentally involved." *Republic Steel Corp. v. Penn. Engineering Corp.*, 785 F.2d 174, 181 (7th Cir.1986) (applying Illinois law). Tyr-Ree entered the contract to obtain tire pyrolysis and shredding equipment which Shred Pax was to manufacture. The services Shred Pax agreed to perform, including installation, testing, and storage, were all important elements of the contract, but the Purchase Order was predominantly a contract for the sale of goods. *See Republic Steel Corp.*, 785 F.2d 174 (holding that a contract for the design, manufacture, and installation of two furnaces was predominantly a contract for the sale of goods and therefore subject to the UCC's four-year statute of limitations); *Pittsburgh–Des Moines Steel Co. v. Brookhaven Manor Water Co.*, 532 F.2d 572 (7th Cir.1976) (holding that a contract for the design, construction, and installation of a water tank was predominantly a contract for the sale of goods under the UCC).

Because the agreement to store the equipment represents a mere modification of the

---

**3.** Although Count I is entitled only "Breach of Contract—Purchase Order" and makes no reference to a separate contract for the storage of the equipment, I do not dismiss Mr. Horbach's argument out of hand because Count I incorporates all the earlier allegations of the Second Amended Complaint, including some statements which do mention another agreement regarding storage of the equipment.

**4.** Mr. Horbach concedes that his Second Amended Complaint does not address my earlier ruling that the statute of limitations bars his claims for breach of contract under the Purchase Order.

**5.** The Purchase Order required that "[a]ny modifications to this Agreement must be made in a writing on behalf of by [sic] Shred Pax and TyrRee." The February 1990 agreement for storage was indeed in writing, as required by the Purchase Order.

Purchase Order, a contract still within the scope of the UCC, Mr. Horbach has not changed my decision that his claim for breach of the Purchase Order is barred by the UCC statute of limitations. Accordingly, Count I will again be dismissed.

### Count III

■ In Count III, Mr. Horbach alleges fraud. Initially, I dismissed this claim because I concluded that it was barred by the statute of limitations. The parties agree that in Illinois, the statute of limitations for fraud is five years. *See* 735 ILCS 5/13–205 (Smith–Hurd 1992). Under the "discovery rule," a plaintiff has five years to file suit from the point that he " 'knows or reasonably should know that he has been injured and that his injury was wrongfully caused.' " *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 651 N.E.2d 1132, 1135, 209 Ill.Dec. 684, 687 (1995) (quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill.2d 240, 633 N.E.2d 627, 630–631, 198 Ill.Dec. 786, 789–790 (1994)). This complaint was filed on September 11, 1995, and because I concluded in my decision on the first motion to dismiss that Mr. Horbach reasonably should have discovered the alleged fraud before September of 1990, I found his fraud claim to be time barred.

Mr. Horbach has provided additional allegations in his Second Amended Complaint, and he contends that these allegations demonstrate that he could not reasonably have known of the fraud before September of 1990 and that, therefore, his claim is timely. For example, Mr. Horbach alleges that he was without the "technical knowledge and skill" to assess the quality of the equipment. He also alleges that he requested Shred Pax to modify the equipment after the February, 1990 delivery date. The parties dispute whether these and other new allegations should change my decision that Mr. Horbach's fraud claim is time barred.

■ Mr. Horbach first argues that the highly complex nature of the equipment and his own lack of technical expertise meant that the only way to determine whether the equipment met the specifications of the Purchase Order was to test it, which he could not do before September of 1990. Mr. Horbach acknowledges, however, that he discovered the alleged fraud without testing the equipment when an agent inspected it on his behalf in February of 1991. The equipment therefore did not need to be "tested" to discover that it was not ready and did not meet the Purchase Order specifications.

Moreover, Mr. Horbach alleges that when his agent finally inspected the equipment, it consisted of "only scattered components." If the equipment were only in scattered parts as late as February 1991, then certainly even a lay person such as Mr. Horbach would have been able to recognize the alleged fraud in an inspection before September of 1990. Furthermore, if Mr. Horbach could not determine himself whether the equipment was ready and in compliance with the contract, ordinary diligence requires that he have had someone qualified inspect the equipment. Mr. Horbach relied on a representative to inspect the equipment in February of 1991, and there appears to be no reason why a representative could not have performed an inspection before September of 1990.

■ Mr. Horbach also argues that it was not unreasonable to wait until February of 1991 to inspect the equipment, because TyrRee had requested changes to the equipment. Shred Pax first informed TyrRee that the equipment was finished in February of 1990, but at that time, TyrRee requested several modifications. After Shred Pax reported on April 6, 1990 that the requested modifications had been completed and that the equipment was finished, however, TyrRee did not request additional changes until September 25, 1990. Thus, for more than five months, TyrRee thought that the equipment was ready for delivery and testing. Mr. Horbach does not explain why TyrRee did not inspect the equipment during these five months, but clearly the additional changes did not keep him from doing so.[6]

---

6. Additionally, even if Horbach paid Shred Pax for these modifications after September 10, 1990, his cause of action would still be time barred.

*See, e.g., De Santis v. Brauvin Realty Partners, Inc.*, 248 Ill.App.3d 930, 618 N.E.2d 548, 552, 187 Ill.Dec. 957, 961 (1st Dist.1993) (beginning

■ Mr. Horbach also claims that the equipment was not inspected because Tyr-Ree had not yet completed its search for a site to install the equipment. At the request of Shred Pax, TyrRee agreed to wait and have the equipment tested at the eventual operating site rather than at a temporary location. Shred Pax tried to help TyrRee with its efforts to locate a suitable operating site, and in February of 1990, it informed TyrRee of a possible location in West Virginia. By April 6, 1990 when TyrRee still had not obtained the West Virginia (or any other) site, however, Shred Pax announced that it would go ahead and test the equipment at a site of its choosing if TyrRee was unable to find a satisfactory location within 14 days. TyrRee acknowledged this deadline, but failed to secure a testing site by April 20th as requested.[7] Ignoring its pledge, Shred Pax never chose its own site or tested the equipment. Nevertheless, TyrRee still did not inspect the equipment for another 10 months. Although Shred Pax's failure to begin testing might have alerted TyrRee to the alleged fraud, TyrRee still did not inspect the equipment.[8]

The new allegations in Mr. Horbach's Second Amended Complaint do not show that it was reasonable for TyrRee not to inspect the equipment by September of 1990. I therefore again find that Mr. Horbach reasonably should have known of the alleged fraud before September of 1990, and consequently, Mr. Horbach's fraud claim is still time barred.

### Count VIII

■ In Count VIII, Mr. Horbach has attempted to state a claim for conversion. To state a claim for conversion under Illinois law, Mr. Horbach " 'must show a tortious

conversion of the chattel, a right to property in it, and a right to immediate possession which is absolute.' " *National Union Fire Ins. Co. v. Wilkins–Lowe & Co.*, 29 F.3d 337, 340 (7th Cir.1994) (quoting *In re Thebus*, 108 Ill.2d 255, 483 N.E.2d 1258, 1260, 91 Ill.Dec. 623, 625 (1985)). Although an action for conversion may be maintained to recover money, " '[i]t must be shown that the money claimed ... at all times *belonged to the plaintiff* and that the defendant converted it to his own use.' " *Wilkins–Lowe*, 29 F.3d at 340 (quoting *Thebus*, 108 Ill.2d at 261, 483 N.E.2d at 1261, 91 Ill.Dec. at 626) (emphasis added in *Wilkins–Lowe* ).

Mr. Horbach cannot show that the funds allegedly converted by Mr. Kaczmarek and Shred Pax have always belonged to him. Mr. Kaczmarek and Shred Pax accepted the money as advance payments for the equipment and its storage. Under the terms of the agreement, the money belonged to Mr. Kaczmarek and Shred Pax. When the equipment was not completed on time, Mr. Horbach's proper remedy was for breach of contract.

■ Moreover, under Illinois law, "[i]n order for money to be the proper subject of a conversion action, it must be capable of being described as a 'specific chattel.' In order to satisfy this requirement, the plaintiff must have a 'right to a specific fund or specific money in coin or bills.' " *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir.1989) (applying Illinois law) (citations omitted). With this conversion claim, Mr. Horbach seeks only a certain amount of money rather than a specifically identifiable fund or account. Thus, Mr. Horbach cannot state a claim for conversion, and consequently, Count VIII will be dismissed.[9]

statute of limitations for common law fraud when cause of action accrues, which may be before the plaintiff "actually suffers a monetary loss").

7. TyrRee informed Shred Pax on April 20, 1990 that it expected to purchase the West Virginia site within one week. Apparently, TyrRee did not obtain this or any other site because there are no references in the complaint to TyrRee's search for a location to operate the equipment after April 20, 1990.

8. Mr. Horbach also contends that the equipment was not inspected until February of 1991 because TyrRee relied on Shred Pax's representations that it was ready. Mr. Horbach does not explain how this fact counters my earlier decision that a reasonable person would have inspected the equipment sooner.

9. Mr. Horbach's fraud and breach of contract claims remain time barred, and I am dismissing his conversion claim as well. Consequently, Mr. Horbach's equitable claims, represented by Counts IV and V, are still barred.

## Conclusion

For the reasons stated above, Counts I, II, III, IV, V, and VIII will be dismissed.