In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3102

EUGENE HORBACH, individually and
as assignee of TYRREE CORPORATION,
a dissolved Illinois corporation,
and EUGENE HORBACH, on behalf of
TYRREE CORPORATION, a dissolved
Illinois corporation,

Plaintiff-Appellant,

v.

ALVIS KACZMAREK and One Three Six, Inc.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 5180--Elaine E. Bucklo, Judge.

ARGUED MAY 14, 2001--DECIDED April 30, 2002


   Before BAUER, ROVNER, and DIANE P. WOOD,
Circuit Judges.

   ROVNER, Circuit Judge.  In 1989, TyrRee
Corporation agreed to purchase a tire
pyrolysis system (a series of machines
that shred, heat, and convert old tires
into commercially viable by-products)
from Shred Pax Corporation. TyrRee
allegedly paid Shred Pax more than $1.7
million for the assembly and storage of
the machinery but ultimately did not
accept delivery, concluding that it had
not gotten what it had paid for. In 1995,
following TyrRee's dissolution, Eugene
Horbach, TyrRee's majority shareholder
and assignee, filed suit against Shred
Pax (which by then had changed its name
to One Three Six, Inc., but for the sake
of convenience we will ignore the name
change), and its majority shareholder and
president, Alvis Kaczmarek./1 In
pertinent part, Horbach's complaint
sought relief on theories of contractual
breach, fraud, rescission, constructive
trust/ unjust enrichment, and conversion.
The district court dismissed these
claims, finding that the allegations did
not support a claim for conversion and
that the other claims were untimely. We

affirm.

I.

Because the district court dismissed this case at the pleading stage, we accept the allegations in Horbach's complaint as true. E.g., Johnson v. Rivera, 272 F.3d 519, 520 (7th Cir. 2001).

Horbach and Aaron Gellman formed TyrRee, an Illinois corporation, in August of 1989 with the goal of owning and operating tire pyrolysis plants. Horbach, a citizen of the State of Washington, subscribed to 71 percent of TyrRee's stock. Gellman later assigned to Horbach his 21 percent interest in TyrRee, making Horbach the owner of approximately 92 percent of TyrRee's outstanding shares.

On September 5, 1989, TyrRee entered into a preliminary letter agreement with Shred Pax for the purchase of a tire pyrolysis system. That agreement contemplated the subsequent execution of a formal purchase order for the equipment, which the parties completed and signed on September 26, 1989. The purchase order provided that Shred Pax would design and manufacture the equipment in accordance with specifications attached to the order and have it ready for delivery and testing on or before February 1, 1990. The order gave TyrRee the right to inspect, test, and approve the equipment before it accepted delivery. The testing envisioned by the purchase order involved "full and continuous operation" of the equipment over a period of seven days. R. 20 Ex. 4 para. 7.

At a meeting which took place on or about February 9, 1990, Shred Pax informed TyrRee that the equipment was ready for testing and installation. TyrRee had not yet located a suitable site at which it could engage in full-scale testing of the system, however, so the parties agreed that Shred Pax would continue to hold the equipment in exchange for a monthly storage fee until TyrRee was able to locate such a site. TyrRee also wanted Shred Pax to make certain modifications to the pyrolysis system that would take additional time to complete.

On April 6, 1990, Shred Pax sent a letter to TyrRee confirming that the pyrolysis system, as modified, was ready for testing. This letter purported to constitute the formal "Equipment Notice" contemplated by the purchase agreement, entitling Shred Pax to a specified installment payment from TyrRee. TyrRee subsequently advised Shred Pax that it would not be able to conduct acceptance testing of the equipment prior to July and suggested that Shred Pax should conduct the testing itself at a place and time of its own choosing. Apparently, however, Shred Pax opted to wait for TyrRee and continue collecting a storage fee while it did so. Further modifications to the equipment were ordered in September 1990.

TyrRee dissolved on September 9, 1990. All of the company's rights under the initial letter agreement and purchase order were assigned to Horbach.

On or about February 5, 1991, an agent for Horbach visited the facility in Portland, Oregon, where the pyrolysis equipment was being stored. Instead of a completed system, however, the agent discovered only scattered components that did not appear to have been manufactured in compliance with the purchase order. Shred Pax subsequently explained to Horbach that not all of the equipment was, in fact, located in Portland, and that it would take 60 days to assemble the pyrolysis system for acceptance testing. That testing never took place.

On April 18, 1991, Horbach's attorney notified Shred Pax that the purchase order was cancelled because Shred Pax had failed to manufacture and deliver the equipment in accordance with the terms of the order. By this time, Horbach had already paid more than $1.76 million toward the purchase and storage of the equipment and related items. Horbach demanded the return of his money, but Shred Pax refused.

Horbach filed suit against Shred Pax and Kaczmarek in 1995. As we noted at the outset, the district court subsequently dismissed each of the claims that arose from the purchase order. Horbach v. Kaczmarek, 915 F. Supp. 18 (N.D. Ill. 1996); Horbach v. Kaczmarek, 934 F. Supp. 981 (N.D. Ill. 1996)./2

The court found the breach of contract claim untimely. 915 F. Supp. at 22-23. The court noted at the outset that the Illinois Commercial Code specifies a four-year limitations period for such a claim. See 810 ILCS 5/2-725(1). The defendants argued that the limitations had begun to run on February 1, 1990, the date that the purchase order had specified for delivery of the equipment. At the latest, the period began to run on February 5, 1991, when Horbach's agent inspected the equipment and realized that it had not been completed in conformance with the terms of the purchase order. Horbach, however, had waited until September 11, 1995, to bring suit--too long under even the most generous calculation of the four-year limitations period. Horbach asserted that Shred Pax had fraudulently concealed its breach of the purchase order and that he should therefore have the benefit of the longer, five-year limitations period applicable to cases of fraudulent concealment. See 735 ILCS 5/13-215. But, as the district court pointed out, the Illinois Supreme Court has held that this limitations period governs only when the defendant's concealment has left the plaintiff with less than a reasonable time to sue under the otherwise-applicable statute of limitations. See Anderson v. Wagner, 402 N.E.2d 560, 573 (Ill. 1979), appeal dismissed sub nom. Woodward v. Burnham City Hosp., 449 U.S. 807, 101 S. Ct. 54 (1980); see also, e.g., Morris v. Margulis, 754 N.E.2d 314, 319-20 (Ill. 2001); Barratt v. Goldberg, 694 N.E.2d 604, 609 (Ill. App. 1998). Here, Horbach had at least three years left in which to bring suit as of February 1991, when the inspection of the equipment revealed that it was not ready for delivery. The district court found three years to constitute a reasonable period of time in which to bring suit and for that reason found the limitations period for claims of fraudulent concealment not to apply. 915 F. Supp. at 22. Horbach suggested that Anderson and its progeny were inconsistent with the express language of the fraudulent concealment statute, but the district court observed that it was "not at liberty to ignore clear state law authority." Id.

The court dismissed the equitable claims for rescission and constructive trust

pursuant to the doctrine of laches. Id. at 23. That doctrine applies when the plaintiff has waited for an unreasonable length of time to assert his claim and the defendant has been prejudiced by the delay. People v. Wells, 696 N.E.2d 303, 312 (Ill. 1998); Van Milligan v. Board of Fire & Police Commissioners of Village of Glenview, 630 N.E.2d 830, 833 (Ill. 1994). "The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." Tully v. State, 574 N.E.2d 659, 662 (Ill. 1991). Illinois courts follow the general rule that where the limitations period governing claims at law has expired, laches will bar the equitable claims, even if the defendant has not shown prejudice. See Meyers v. Kissner, 594 N.E.2d 336, 340-41 (Ill. 1992); see also, e.g., Golden v. McDermott, Will & Emery, 702 N.E.2d 581, 589 (Ill. App. 1998). Thus, because Horbach had waited to file suit until the statute of limitations on his breach of contract claim had already run, laches demanded the dismissal of the accompanying equitable claims. 915 F. Supp. at 23.

Although the fraud claim was subject to a longer, five-year period of limitations, see 735 ILCS 5/13-205, the court found that claim to be untimely as well. Pursuant to the discovery rule, commencement of the pertinent limitations period may be delayed until such time as the plaintiff knew or should have known that he was wrongfully injured. See generally Hermitage Corp. v. Contractors Adjustment Co., 651 N.E.2d 1132, 1135 (Ill. 1995). Illinois courts have applied this rule to torts arising out of contractual relationships. See id. at 1136 (collecting cases). Horbach argued that the limitations period began to run no sooner than February 5, 1991, relying on the complaint's allegation that he remained ignorant of Shred Pax's wrongdoing until his agent inspected the equipment on that date. However, the complaint also revealed that Shred Pax had informed TyrRee in April of 1990 that the equipment was ready for delivery and testing; and notwithstanding Shred Pax's efforts to schedule inspection and testing of the system, TyrRee and Horbach had waited for more than ten months to look at the equipment. Horbach had alleged no reason for this delay. Had

Horbach inspected the equipment promptly after Shred Pax had announced that it was ready, the court observed, he would have discovered his injury. The court therefore concluded that the statute of limitations began to run sometime before September of 1990 and that Horbach's fraud claim, filed in September 1995, was too late. 915 F. Supp. at 24.

Following the dismissal of these claims, Horbach obtained the court's permission to file a second amended complaint which set forth additional allegations that Horbach believed would resuscitate the fraud claim and which also asserted a new claim for conversion./3 In the district court's eyes, however, the second amended complaint fared no better than the first.

With respect to the fraud claim, the court found the new allegations insufficient to justify Horbach's delay in discovering the alleged fraud. 934 F. Supp. at 985-86. Horbach alleged that the pyrolysis equipment was highly complex and that he lacked the technical knowledge and skill to assess the quality of that equipment himself. The only way to determine whether the system met the requirements of the purchase order, Horbach asserted, was to test it, which he could not reasonably have done before September of 1990. But the court noted that when Horbach's agent finally inspected the equipment in February 1991, its shortcomings (and thus Shred Pax's alleged fraud) were readily apparent. In fact, the complaint revealed that there was no integrated "system" at all, but only scattered components. This was something that any qualified inspector-- if not a lay person like Horbach himself- -would have readily determined upon examining the equipment. The court again found no plausible basis for inferring that the injury could not have been discovered prior to September of 1990. Id. at 985. Horbach also suggested that it was not unreasonable for him to postpone inspection of the system until February of 1991 because he had requested modifications to the system after February 1990. However, the court pointed out that Shred Pax had completed these modifications by the time it announced in April 1990 that the equipment was ready for testing and delivery, and TyrRee did not request additional changes until late September 1990. For that five-month

period, then, TyrRee believed the equipment was ready for testing. Horbach offered no reasonable excuse for not having inspected the equipment during that time. Id. Finally, Horbach asserted that his inspection of the equipment was delayed by his ongoing search for a site where the equipment could not only be tested but permanently installed. However, as the district court pointed out, the complaint indicated that on April 6, 1990, in its letter announcing the readiness of the equipment, Shred Pax informed TyrRee that it would proceed with testing of the equipment at a site of its own choosing in the event TyrRee was unable to locate a site within fourteen days. The parties understood, then, that inspection and testing of the equipment was not to be postponed any longer based on Horbach's search for a permanent installation site. In fact, as we noted earlier, Shred Pax did not test the equipment--a fact, the district court added, that might have tipped off TyrRee that something was amiss. Even so, Horbach postponed his inspection for ten months--a delay that the court believed was not justifiable. Id. at 986. Accordingly, the court dismissed the fraud claim for a second time.

The court found no basis in the allegations of the complaint for a conversion claim. Id. The theory underlying this claim was that Shred Pax and Kaczmarek had improperly converted Horbach's money to their own use by accepting his periodic payments for the completion and storage of the pyrolysis system all the while knowing that they were not entitled to those payments due to the inadequate state of the equipment. The court found this rationale defective for two reasons. First, because the purchase order entitled the defendants to periodic advance payments, Horbach could not show that the money he had paid belonged at all times to him. Horbach's remedy, upon discovery that the equipment had not been completed, was to sue for breach of contract rather than conversion. Id. Second, in order to establish the conversion of money under Illinois law, a plaintiff must show that he had "a 'right to a specific fund or specific money in coin or bills.'" Sutherland v. O'Malley, 882 F.2d 1196, 1200 (7th Cir. 1989), quoting Mid-American Fire & Marine Ins. Co. v.

Middleton, 468 N.E.2d 1335, 1339 (Ill. App. 1984). Horbach, however, was not claiming entitlement to a specific fund or account (let alone specific coins or bills), but rather a particular amount of money. His claim thus did not meet this particular criterion of a conversion claim. 934 F. Supp. at 986.

II.

Horbach challenges four aspects of the district court's judgment. First, he contends that the longer limitations period for fraudulent concealment should apply to his breach of contract claim. Second, assuming that his breach of contract claim is timely, Horbach contends that his equitable claims are timely as well, and that the court erred in invoking laches to dispose of them. Third, Horbach maintains that one cannot say as a matter of law that he should have known of the defendants' alleged fraud earlier, and that, consequently, the district court should not have dismissed his fraud claim as untimely. Finally, Horbach asserts that his complaint states a valid claim for conversion. As this case was dismissed at the pleading stage, our review is of course de novo. E.g., Vorhees v. Naper Aero Club, Inc., 272 F.3d 398, 401 (7th Cir. 2001).

A. Timeliness of the Breach of Contract Claim

Horbach contends that the district court erred in applying the four-year limitations period to his claim for breach of contract rather than the longer five-year period that the Illinois legislature has specified for cases in which the defendant has fraudulently concealed a cause of action from the person to whom that cause belongs. See 735 ILCS 5/13-215. As we noted above, the district court applied the four-year period based on the Illinois Supreme Court's opinion in Anderson, 402 N.E.2d 560. Anderson construed the fraudulent concealment statute to apply only when the defendant's concealment has deprived the plaintiff of a reasonable amount of time in which to bring suit under the statute of limitations that would ordinarily apply. Id. at 573. In this case, when Horbach discovered in February 1991 that the pyrolysis system was not

complete as Shred Pax had represented, Horbach still had three years in which to bring suit before the four-year limitations period specified for contractual claims expired. The district court thought that three years was more than enough time in which to bring suit and so, pursuant to Anderson and its progeny, declined to apply the longer limitations period for cases of fraudulent concealment. See, e.g., id. at 573 (seven to sixteen months following discovery of fraudulent concealment is a reasonable amount of time in which to bring suit). Horbach does not suggest that the district court misinterpreted Anderson but argues instead that Anderson's holding is inconsistent with the language of the fraudulent concealment statute. Horbach Br. 12. Horbach believes that given the opportunity, the Illinois Supreme Court would reconsider and overrule its holding in Anderson, and on that basis he contends that this court should not consider itself bound by this precedent. See West v. American Tel. & Tel. Co., 311 U.S. 223, 236, 61 S. Ct. 179, 183 (1940) ("When [state's highest court] has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted.") (emphasis supplied).

We discern no basis for ignoring the Illinois Supreme Court's opinion in Anderson, however. Sitting in diversity, this court must look to state law on matters of substance, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938), including the relevant statute of limitations, e.g., Doe v. Roe No. 1, 52 F.3d 151, 154 (7th Cir. 1995). The parties agree that in this case, the law of Illinois governs. Anderson embodies the Illinois Supreme Court's interpretation of the fraudulent concealment statute and leaves no doubt that the statute does not apply where, as here, the plaintiff discovers his injury in plenty of time to file suit within the limitations period that would otherwise apply.

Horbach suggests that the Illinois Supreme Court's subsequent opinion in Hermitage Corp. v. Contractors Adjustment Co., supra, 651 N.E.2d 1132, signals a

retreat from Anderson, but we disagree. In Hermitage, the court was concerned with the discovery rule, which, as we noted earlier, delays the commencement of the statute of limitations in certain cases until such time as the plaintiff knew or should have known that he had been injured. See id. at 1135. The defendant urged the Illinois Supreme Court to hold, as some lower courts had done, that the discovery rule would not postpone the start of the limitations period past the date of injury so long as the plaintiff still had a reasonable amount of time to bring suit once he became aware (or should have become aware) that he had been injured. The defendant cited the court's holding in Anderson in support of this argument. But the court noted that it had already covered this ground in Sharpe v. Jackson Park Hosp., 441 N.E.2d 645 (1982), where it had rejected the notion that Anderson's construction of the fraudulent concealment statute created any exception to or limitation upon the discovery rule. Id. at 646-47; see Hermitage, 651 N.E.2d at 1137-38. The discovery rule, the court re-emphasized in Hermitage, delays the start of the limitations period, whereas the fraudulent concealment statute extends the limitations period. Id. at 1137. Anderson's "reasonable time" rule applies only in the latter situation. See id. "[B]ecause this case does not involve a fraudulent concealment issue that might extend the statute of limitations," Hermitage concluded, "we do not address Anderson." Id. at 1138.

In short, Hermitage does not signal a retreat from Anderson. The court merely recognized that the discovery rule and the fraudulent concealment statute operate in two different ways, and that consequently it would be inappropriate to engraft Anderson's "reasonable time" limitation onto the discovery rule. See also Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 442 n.7 (7th Cir. 1994). Any notion that the court is on the verge of abandoning Anderson is put to rest by the court's decision just last year in Morris v. Margulis, supra, in which it applied the "reasonable time" rule without reservation. 754 N.E.2d at 319-20.

B. Timeliness of the Equitable Claims

Relying on the fact that the statute of

limitations had run on Horbach's claim for breach of contract, the district court found that his equitable claims ought to be dismissed on the basis of laches. Horbach does not quarrel with the court's application of the laches doctrine, but rather reiterates his contention that his breach of contract claim was timely. But we have rejected that argument, and so have no need to further consider the dismissal of his equitable claims.

## C. Timeliness of the Fraud Claim

Horbach had five years from the date he knew or reasonably should have known that the defendants had perpetrated a fraud upon him in which to file suit. 735 ILCS 5/13-205. Horbach did not actually discover the alleged fraud until February 1991, when his agent inspected the pyrolysis equipment. He filed suit within five years of that date; but the question presented here is whether he should have known of his injury sooner. Specifically, we must ask whether Horbach should have discovered his injury sooner than September 1990 (five years before he brought suit). The district court thought that he should have done so, given that Shred Pax had informed Horbach that the equipment was ready for testing in April 1990 and a simple inspection would have revealed that the system had not been completed. Horbach contends that the district court was not entitled to make this determination as a matter of law. He suggests that in view of the complexity of the equipment, his own lack of expertise, and the modifications he had asked Shred Pax to make, the only way to determine whether the system met the specifications set forth in the purchase order was to test it, and this he was not in a position to do before September of 1990. The mere fact that a visual inspection would have identified the alleged fraud does not mean that he was obligated to conduct such an inspection, Horbach argues.

We agree with the district court, however, that Horbach's own allegations reveal that he could and should have discovered his injury prior to September of 1990. Although Horbach makes much of the complexity of the pyrolysis system, his own lack of expertise, and the need for testing (which imposed its own set of

demands) to determine whether the machinery conformed to the purchase order, the complaint makes clear that Shred Pax's purported fraud was readily apparent to the naked, non-expert eye. When Horbach's agent visited the Portland facility, he found no pyrolysis system at all, but only scattered components, and the components that he could see did not conform to specifications. R. 20 para. 80. Thus, the complexity of the machinery did nothing to cloak Shred Pax's purported fraud. Shred Pax's alleged misrepresentation--that the system was complete and ready for testing--would have been immediately apparent to anyone conducting an inspection. Under these circumstances, Horbach's delay in making such inspection was not reasonable. Shred Pax had announced the completion of the equipment, both parties apparently assumed that testing of the equipment was imminent, Horbach had already paid well in excess of $1 million for the equipment, and Shred Pax was charging TyrRee and Horbach a monthly storage fee for the equipment pending the selection of a permanent installation site. For all of these reasons, we believe that Horbach should have discovered Shred Pax's alleged fraud prior to September of 1990. The district court correctly dismissed the fraud claim as untimely.

D. The Conversion Claim

Horbach alleges in his second amended complaint that between April 1 and September 10, 1990, he deposited some $56,800 with the defendants in reliance upon their representation that the pyrolysis equipment was complete and in consideration for defendants' agreement to hold the equipment. In fact, Horbach alleges, the equipment was far from ready and as a result the defendants were not entitled to those payments; yet, the defendants refused his demand for the return of his money. Horbach contends that these allegations are sufficient to establish a viable claim for conversion.

"'The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.'" In re Thebus, 483 N.E.2d 1258, 1260 (Ill. 1985), quoting Bender v. Consolidated Mink Ranch, Inc., 441 N.E.2d 1315, 1320 (Ill. App. 1982); see also National Union Fire

Ins. Co. of Pittsburgh, Pa. v. Wilkins-Lowe & Co., 29 F.3d 337, 340 (7th Cir. 1994) (per curiam). An asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as "specific chattel," Thebus, 483 N.E.2d at 1260--in other words, "a specific fund or specific money in coin or bills," Mid-America Fire & Marine Ins. Co. v. Middleton, supra, 468 N.E.2d at 1339--will conversion lie. Moreover, the plaintiff's right to the money must be absolute. See Thebus, 483 N.E.2d at 1260, quoting Jensen v. Chicago & W. Ind. R.R. Co., 419 N.E.2d 578, 593 (Ill. App. 1981). "It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." Thebus, 483 N.E.2d at 1261 (emphasis supplied); see also National Union Fire Ins. Co., 29 F.3d at 340.

The district court correctly dismissed Horbach's conversion claim. Even if we assume that the money Horbach paid to defendants for the completion and storage of the pyrolysis equipment properly could be characterized as specific chattel, Horbach cannot show that his right to possession of that money was absolute. As his complaint reveals, Horbach made the payments in question to the defendants by agreement in exchange for their commitment to complete and store the equipment while he continued the search for an appropriate testing and installation site. The incomplete state of the equipment, and its failure to conform to the agreed-upon specifications, may have given rise to an obligation on the defendants' part to return of some or all of the money that he had paid to them. But Horbach cannot show that the money at all times belonged unconditionally to him. His agreement with the defendants obligated him to pay them that money; and the defendants' receipt of that money thus cannot be described as unauthorized or wrongful in the sense that a claim for conversion requires.

III.

For the reasons we have discussed, we AFFIRM the district court's decision to dismiss Horbach's claims for breach of contract, rescission, constructive trust/unjust enrichment, fraud, and

conversion.

FOOTNOTES

/1 Although Horbach named One Three Six as a defendant below, the company has opted not to appear in this appeal.

/2 Horbach asserted a number of other claims based on an alleged agreement with Kaczmarek to purchase approximately 80 percent of Shred Pax's stock. The disposition of those claims is not at issue in this appeal.

/3 The second amended complaint additionally attempted to assert a new claim for breach of contract based on Shred Pax's agreement to store the pyrolysis equipment pending acceptance testing. The district court determined that this agreement amounted to no more than a modification of the purchase order and thus was likewise barred by the four-year statute of limitations. 934 F. Supp. at 984-85. Horbach does not challenge this reasoning on appeal.