In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2406

UNITED CENTRAL BANK,

*Counter-Defendant-Appellee,*

*v.*

DAVENPORT ESTATE LLC, *et al.,*

*Counter-Plaintiffs-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-CV-03176 — **Andrea R. Wood**, *Judge.*

ARGUED JANUARY 22, 2016 — DECIDED MARCH 4, 2016

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* In 2008, the predecessor to United
Central Bank ("UCB") made a $700,000 loan to a group of in-
vestors.[1] UCB and the investors agreed that the money would
be placed in escrow but did not record their understanding in

---

[1] The investors include Dany Investment, LLC; Hampshire Plaza,
LLC; Dells Estate LLC; USA Gastech, Inc.; Pakus Management, LLC; Dav-
enport Estate LLC; and Umar F. Paracha.

a written escrow agreement. Later, the investors repeatedly asked UCB for the $700,000 but never received it. In 2010, the investors brought a breach of contract claim, and UCB moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted UCB's motion to dismiss since there was no written agreement as required by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") and the Illinois Credit Agreement Act ("ICAA"). We affirm.

## I. Background

In 2008, Mutual Bank (UCB's predecessor) made loans to the group of investors to purchase three properties. As part of the transaction, Mutual Bank also agreed to loan the investors $700,000 for repairs and renovations on the properties. The $700,000 was placed in escrow, but the parties did not enter into a written escrow agreement. The only written reference to the escrow money is in the closing documents for each property. Once the investors exhausted much of their resources on repairs, they requested the $700,000 in escrow. However, they never received this money from Mutual Bank.

In 2009, the Federal Deposit Insurance Corporation ("FDIC") shut down Mutual Bank for gross negligence and other wrongful conduct. The FDIC, as receiver for Mutual Bank, entered into a Purchase and Assumption Agreement with UCB. Under this agreement, UCB acquired Mutual Bank's loans and assets. The investors made repeated written and oral demands on UCB to release the $700,000 in escrow but did not receive the money.

In 2010, UCB brought suit against the investors to foreclose on the three properties and enforce related promissory

notes and guarantees. The investors brought several counter-claims. Their second amended counterclaim, filed in April 2014, contends that UCB's refusal to release the escrow funds constituted a breach of contract. UCB filed a motion to dismiss pursuant to Rule 12(b)(6),[2] arguing that because there was no written escrow agreement, the investors could not bring this claim.

On October 19, 2015, the district court granted UCB's motion to dismiss with prejudice. The court based its holding on the Financial Institutions Reform, Recovery, and Enforcement Act and the Illinois Credit Agreement Act. First, the court held that since the escrow agreement was never put in writing, the claim was barred by § 1823(e) of FIRREA. Section 1823(e) states that "[n]o agreement which tends to diminish or defeat the interest of the [FDIC] … shall be valid against the [FDIC] unless such agreement … is in writing … ." 12 U.S.C. § 1823(e)(1)(A); *see also Fed. Deposit Ins. Corp. v. O'Neil*, 809 F.2d 350, 353–54 (7th Cir. 1987). Further, § 1821(d) states that "any agreement which does not meet the requirements set forth in [§ 1823(e)] shall not form the basis of, or substantially comprise, a claim against the [FDIC]." § 1821(d)(9)(A).

The district court explained that the escrow agreement that forms the basis for the counterclaim tends to diminish the interests of the FDIC and its assignee UCB. Since the agreement was not properly memorialized in writing, the agreement does not meet the requirements of § 1823(e), and thus

---

[2] UCB's motion to dismiss also relied on Rule 12(b)(1) and argued that, with the exception of Davenport Estate LLC, the investors lacked standing. The district court agreed that only Davenport has standing and dismissed the counterclaims brought by the other investors. The investors do not challenge this conclusion on appeal.

the claim is barred by FIRREA.[3] The court acknowledged the investors' argument that the written references to the escrow agreement in the closing documents were sufficient to support their claim. However, the district court pointed out that in *O'Neil*, 809 F.2d at 353–54, this Court rejected such incorporation by reference as a means to satisfy the requirements of § 1823(e).

Next, the district court held that the claim was also barred by the ICAA. Illinois courts have held that escrow agreements for loan proceeds are credit agreements within the meaning of the ICAA. *See, e.g.*, *R & B Kapital Dev., LLC v. N. Shore Cmty. Bank & Trust Co.*, 832 N.E.2d 246, 251–53 (Ill. App. Ct. 2005). Thus, the escrow agreement in this case is a credit agreement. To maintain an action on a credit agreement, the ICAA requires the agreement to be in writing. 815 Ill. Comp. Stat. Ann. 160/2. Because there was no written agreement and because the court had given the investors several chances to raise a plausible claim, the district court dismissed the second amended counterclaim with prejudice.

## II. Discussion

We review de novo the district court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted. *Alexander v. McKinney*, 692 F.3d 553, 555 (7th Cir. 2012). We construe the counterclaim in the light most favorable to the investors, accepting as true all well-pleaded facts

---

[3] We have noted that the "purpose behind section 1823(e) … is to enable the FDIC, in deciding how to proceed with respect to a troubled bank, to make a quick and certain inventory of the bank's assets. It can do that only if it can disregard secret oral agreements that may impair the value of those assets." *O'Neil*, 809 F.2d at 353 (citation omitted).

and drawing reasonable inferences in their favor. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

The investors raise two arguments on appeal. First, the investors argue that FIRREA does not apply in situations where the defunct bank is holding escrowed money for investors. However, they do not cite any applicable legal authority or provide support for this proposition. Thus, this undeveloped argument is waived. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008) ("perfunctory and undeveloped" arguments are waived). The investors do not address the district court's application of the ICAA, so any challenge to that part of the district court's holding is also waived.

Second, the investors argue for the first time that by failing to return the escrow money, UCB committed conversion. In response, UCB contends that the investors waived this argument because they only raised a breach of contract claim before the district court. We agree. The investors did not argue conversion in their second amended counterclaim or in their response to UCB's motion to dismiss; thus, the argument is waived.[4] *See Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 546 (7th Cir. 1994) (stating that the "failure to draw the district court's attention to an applicable legal theory waives pursuit of that theory" on appeal).

---

[4] The investors argue that they did not waive their conversion claim because they briefly mentioned conversion in an earlier memorandum filed almost a year before the second amended counterclaim was filed in April 2014. This argument fails because a conclusory statement in an earlier filing does not change the fact that the investors did not raise or develop this legal theory in their second amended counterclaim or in their response to UCB's motion to dismiss.

Even if we consider the merits of the investors' conversion argument, the argument is insufficiently developed to succeed. To establish conversion of money, a plaintiff must show that the money "*at all times* belonged to the plaintiff and that the defendant converted it to his own use." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002). An asserted right to money will rarely support a conversion claim. *See id.* The plaintiff must show that the money at issue can be described as "a specific fund or specific money in coin or bills." *Id.* (citation and internal quotation marks omitted).

The investors contend that they are "not seeking to enforce any agreement," since "there is no agreement to enforce," and that they are "simply seeking to get [their] money back." This is not enough to state a claim for conversion or persuade us to reverse the district court. In fact, the investors seem to concede that the district court properly dismissed the breach of contract claim, since they again admit that there was no written escrow agreement.

Finally, the investors argue that the district court could have permitted them to file a third amended counterclaim so that they could proceed under a theory of conversion. But the investors did not move to file a third amended counterclaim, and it was not the district court's responsibility to ask the investors to do so or to make their legal arguments for them. *See Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("The federal courts will not invent legal arguments for litigants.").

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.