NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2019
Decided January 6, 2020

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1354

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Southern District of Indiana. |
| | |
| *v.* | No. 1:16CR00219-001 |
| | |
| RICKY D. CLARK, | Jane Magnus-Stinson, |
| *Defendant-Appellant*. | *Chief Judge*. |

**ORDER**

Ricky Clark was charged with multiple counts related to possession of child pornography and coercion, enticement, and sexual exploitation of three minor victims. He moved to suppress evidence obtained during an interview at his home after he asked for an attorney but then indicated that he was "willing to talk" to detectives. Clark argued that the encounter was custodial, so his statements and the other evidence obtained after he requested counsel must be excluded. The district court concluded that the interrogation was not custodial and denied the motion. Clark pleaded guilty, reserving the right to appeal the suppression ruling. We affirm.

## I. Background

Acting on tips about illegal online activities, Detectives Kurt Spivey and Ginger Marshall went to Clark's home to question him. The detectives wore plain clothes, concealed their guns, and did not bring handcuffs into the house. Clark's mother answered the door, and she and Clark invited the detectives inside. Detective Spivey told Clark that he did not have to speak with them. When Clark agreed to answer the detectives' questions, Detective Spivey warned him that the subject was sensitive and asked if Clark wished to speak in private. Clark declined, saying that he wanted his mother present, and she remained.

Soon after the detectives began questioning Clark about his online activities with minors, he asked for an attorney. Clark said, "I think I need a lawyer or something. I'm really scared. I don't know what's going on here." After his mother told him to calm down, the police acknowledged his right to counsel and his option to talk to them without one, and he agreed to do so:

Marshall: Obviously we're talking about something that you think has happened because --

Clark: I think there might have been some girls that may have lied about their age or something at some point.

…

Spivey: You do have the right to an attorney.

Clark: Okay.

Spivey: Okay? That's fine if you want to do that, or you can talk to us now and we can start working this out.

Clark: I want a -- I want an attorney to talk to. I'm just scared. I don't know exactly what's going on.

Spivey: Right, I understand.

Clark: You're confusing me.

> Spivey:    Right. And we're trying to make sure that you understand what your rights are.
>
> Clark:     Yeah.
>
> Spivey:    So, okay, that is one of your rights and -- and you can do that, but like I said, we're here, we're ready to talk about this; if you want to talk about it, we can continue.
>
> Clark:     I'm -- I'm willing to talk about it.

After Clark said that he was "willing to talk," he admitted that he had received and deleted photos of underage girls. The detectives then asked Clark to consent to a search of his cell phone and laptop. Clark declined, stating, "I don't want to incriminate myself." The detectives continued to press for Clark's phone, and he again refused, repeating, "I don't want to incriminate myself anymore." The detectives advised Clark that he could either turn over his devices or they would get a search warrant. Clark worried aloud that he had photos of underage girls on his phone in his deleted files.

Near the end of the interview, which lasted under an hour, Clark walked to his bedroom, and both detectives followed him. In his bedroom Clark gave them one phone, and they noticed another phone. Clark picked up the second phone and tried to destroy it; a scuffle ensued between Clark and Detective Spivey. Clark was then arrested, and the detectives obtained a search warrant for the residence.

Clark was charged by superseding indictment with 27 counts related to the receipt and possession of child pornography and coercion, enticement, and sexual exploitation of three minor victims. Clark moved to suppress the statements he made to Detectives Spivey and Marshall during the home encounter and the evidence obtained as a result. He argued that because the interrogation was custodial and he had asked for a lawyer, the rule of *Miranda v. Arizona*, 384 U.S. 436 (1965), required suppression of the statements and evidence that the police obtained. The district court, Judge Lawrence presiding, denied the motion, concluding that Clark was not in custody during the interrogation. The judge relied on the following factors: the interrogation occurred in Clark's home; Clark invited the detectives into his home; his mother was present; only two detectives—in plain clothes and with no weapons revealed—questioned Clark; Clark was not physically restrained during questioning; the interrogation lasted well under an hour; and the tone of questioning was not hostile or combative.

Clark later pleaded guilty to all charges and was sentenced to life in prison. In his plea agreement, he reserved the right to appeal the denial of his suppression motion.

## II. Discussion

As a matter of long-established Fifth Amendment law, before police officers may question a suspect in custody, they must warn the suspect that he may remain silent and that he has the right to an attorney; if the suspect asks for an attorney, questioning must cease. *See Miranda*, 384 U.S. at 444–45. Clark argues that he was in custody during the interrogation at his home; therefore, the detectives violated the *Miranda* rule. We review de novo the district court's conclusion that Clark was not in custody. *See United States v. Patterson*, 826 F.3d 450, 454–55 (7th Cir. 2016).

To decide whether a suspect is in custody, we consider all the circumstances of the interrogation to assess whether a reasonable person in the suspect's position would have felt free to leave. *See Howes v. Fields*, 565 U.S. 499, 509 (2012). The following factors are relevant: the location and duration of the questioning, the suspect's statements, and the use of physical restraints. *See id.* In addition, we consider whether the suspect consented to questioning, whether the police told the suspect that he was not under arrest, how many officers were present, whether they displayed force, and whether their tone likely demanded obedience. *See Patterson*, 826 F.3d at 455.

Clark argues that the district judge failed to analyze three factors that in his view establish that he was in custody during the interrogation: (1) the detectives did not tell him that he was *not* under arrest; rather, they told him that he had a right to counsel and then "ignored" his request for one; (2) he admitted to serious crimes (receiving photos of underage girls) early in the interrogation; and (3) the detectives followed him to his bedroom at the end of the interview.

We see no reason to disagree with the judge's ruling. First, Clark's request for a lawyer and the detectives' advice that he had the right to one did not make the encounter custodial. When the police advise a suspect that he may have an attorney without saying whether the suspect is under arrest, that alone "does not convert an otherwise noncustodial detention into a custodial arrest under *Miranda*." *Sprosty v. Buchler*, 79 F.3d 635, 642 (7th Cir. 1996). Otherwise the police would be discouraged from discussing potential legal options with noncustodial suspects. Relying on an out-of-circuit case, Clark argues that when the custodial status of an interrogation is

unclear, "law enforcement officers are not free to give the *Miranda* warning and then blatantly ignore a suspect's attempt to invoke any right thereunder." *United States v. Bautista*, 145 F.3d 1140, 1151 (10th Cir. 1998). We have no need to consider the precise factual context of the Tenth Circuit's statement in *Bautista* because that case does not help Clark. First, the detectives did not give Clark full *Miranda* warnings. Second, they did not "blatantly ignore" his attempt to ask for counsel. Rather, they acknowledged that he could seek counsel or, alternatively, he could talk to them without counsel. Clark then decided to do the latter. Third, *Bautista* does not hold that if the police do give *Miranda* warnings and then "ignore" a request for counsel, the encounter is necessarily custodial. *See id.* at 1148. It merely held that a court should consider those facts when analyzing the question of custody, *see id.*, as Judge Lawrence did here.

Clark also argues that because he admitted to serious crimes early in the interrogation, he could not have believed that the detectives would let him go rather than arrest him if he tried to leave. Interrogations often elicit incriminating admissions without being custodial. *See United States v. Ambrose*, 668 F.3d 943, 956 (7th Cir. 2012). Moreover, Clark's statements were ambiguous. Although he said that he had received photos from underage girls on his phone, he disclaimed criminal liability by saying that he had deleted them.

Finally, Clark points to the fact that the detectives followed him to his bedroom. But this factor is at most neutral. On the one hand, the home is the most highly protected zone of privacy, *see Kyllo v. United States*, 533 U.S. 27, 31 (2001), so a suspect may not feel free to leave if police confront him there. But the detectives did not force themselves into Clark's home or control it once inside. *See Sprosty*, 79 F.3d at 641–42 (police control over a setting is more important than its familiarity). Clark and his mother invited them in, his mother remained present at Clark's request, the two plain-clothes officers displayed no weapons, and they told Clark that he did not have to talk to them. This kind of interrogation in familiar surroundings lasting under an hour "generally weighs in favor of finding that [the suspect] was not in custody." *United States v. Borostowski*, 775 F.3d 851, 862 (7th Cir. 2014); *compare Ambrose*, 668 F.3d at 957–58 (suspect not in custody where two plain-clothes agents conduct a nonhostile interview), *with Sprosty*, 79 F.3d at 642–43 (suspect in custody where four armed officers questioned him for over three hours in the home while another stood guard over him).

Because we conclude that Clark was not in custody during his interrogation, we have no need to address his argument that the judge should have suppressed, as "fruit of the poisonous tree," the physical evidence (his phones and their contents) obtained as

a result of his statements. The detectives did not violate the rule of *Miranda* and Clark does not argue that the detectives otherwise obtained the phones unlawfully, so no "poisonous fruit" is present.

Clark's last argument is that even if he was not in custody, the judge should have suppressed his statements as coerced. But at oral argument counsel conceded that this argument was raised for the first time on appeal, so we do not address it. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).

We AFFIRM the district court's judgment.